[No. H027436. Sixth Dist. July 15, 2005.]

HAB SIAM, Plaintiff and Respondent, v.
MURTZ KIZILBASH, Defendant and Appellant.

**Counsel**

Law Offices of J. Byron Fleck, J. Byron Fleck; Finwall Law Offices and Gordon J. Finwal for Defendant and Appellant.

Law Offices of David Yong Chun and David Yong Chun for Plaintiff and Respondent.

## OPINION

**PREMO, J.**—Defendant Murtz Kizilbash accused plaintiff Hab Siam of abusing defendant's two young sons. Defendant reported plaintiff's alleged abuse to law enforcement, school officials, and others. He also filed a civil harassment petition against plaintiff. (Code. Civ. Proc., § 527.6.)[1] Plaintiff denied the allegations and sued defendant for defamation, emotional distress, malicious prosecution, and statutory violations. Defendant filed a special motion to strike. (§ 425.16.) The trial court denied the motion. Defendant appeals from that order. (§ 904.1, subd. (a)(13).)

On appeal defendant contends, among other things, that plaintiff cannot prevail on his claims because defendant's statements are subject to the litigation privilege (Civ. Code, § 47 subd. (b) (Civil Code section 47(b)) and, for policy reasons, a civil harassment petition should not be a permissible basis for a malicious prosecution claim.

We conclude that pursuant to the policy enunciated in *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon Appel*), a cause of action for malicious prosecution may not be based upon an unsuccessful civil harassment petition. (§ 527.6.) We reject defendant's other arguments, including his assertion of privilege, which we conclude is overridden by the provisions of the Child Abuse and Neglect Reporting Act. (Pen. Code, §§ 11164 et seq., 11172, subd. (a) (Penal Code, section 11172(a)).)

We shall reverse the trial court's order denying defendant's special motion to strike and direct the court to enter a new order striking the cause of action for malicious prosecution.

### A. FACTUAL AND PROCEDURAL BACKGROUND

This case arose after plaintiff became involved with defendant's former wife, Momina Zaidi. Defendant and Zaidi had been married in Pakistan in 1994 and moved to California shortly thereafter. They were separated in 2000. When Zaidi first decided to end the marriage, defendant allegedly demanded that she agree to an Islamic divorce, give up custody of the couple's two young sons, and relinquish her community property rights. Zaidi states that when she refused these demands defendant swore revenge. A judgment of dissolution was entered in 2003 but the parties continued to litigate custody issues. The custody dispute became very bitter and contentious and defendant was allegedly very hostile and abusive toward Zaidi. According to the first amended complaint, after plaintiff became involved with Zaidi defendant began directing his hostility toward him as well.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise specified.

Defendant accused plaintiff of abusing his two boys. He reported the alleged abuse to school officials and people involved in the family law matter. Defendant also made reports to the Palo Alto and the East Palo Alto Police Departments. The resulting law enforcement investigations did not reveal any abuse. Plaintiff also claims that defendant coached the boys to transmit his threats of violence to plaintiff and to say "bad things" about plaintiff to other people so that he would be put in jail. Indeed, the boys' therapist, Louise Burton, initiated a child abuse investigation when she reported something one of the boys told her about plaintiff to the authorities in Santa Clara County. The ensuing case was investigated and closed as unfounded within a couple of weeks.

Approximately two months after the Burton case had been closed, defendant filed a petition in San Mateo County (where plaintiff lived) seeking an injunction prohibiting harassment. (§ 527.6.) In connection with that petition defendant obtained an ex parte temporary restraining order (TRO) against plaintiff by allegedly representing to the judge that the Santa Clara County child abuse investigation initiated by Burton was still open. The TRO prevented plaintiff from coming near the children. The trial court ultimately denied defendant's request for a permanent injunction. The TRO was dissolved and the court awarded plaintiff over $12,000 in attorney fees.

Plaintiff's first amended complaint contained eight causes of action: (1) libel and libel per se, (2) slander and slander per se, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, (5) making a knowingly false report of child abuse in violation of Penal Code section 11172(a), (6) violation of Civil Code section 51.7 (the Ralph Act), (7) malicious prosecution, and (8) abuse of process. The trial court denied defendant's special motion to strike as to all eight causes of action.

### B. LEGAL FRAMEWORK AND STANDARD OF REVIEW

A special motion to strike under section 425.16, the so-called anti-SLAPP statute, allows a defendant to gain early dismissal of a lawsuit that qualifies as a SLAPP. "SLAPP is an acronym for 'strategic lawsuits against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 [3 Cal.Rptr.3d 636, 74 P.3d 737].) A SLAPP arises "from any act of [a] person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue" and is subject to a special motion to strike "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Thus, evaluation of an

anti-SLAPP motion requires a two-step process in the trial court. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d 519, 52 P.3d 695].) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

In the present case, defendant contends that he should have prevailed on both prongs of the test. Plaintiff does not address the first prong. Nevertheless, since our standard of review is de novo (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685]), we shall conduct the complete analysis.

## C. Discussion

### 1. *The Applicability of Section 425.16*

A defendant meets the burden of showing that a plaintiff's action arises from a protected activity by showing that the acts underlying the plaintiff's cause of action fall within one of the four categories of conduct described in section 425.16, subdivision (e). (*Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1417 [103 Cal.Rptr.2d 174].) Those four categories are: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

With the exception of the sixth cause of action for violation of Civil Code section 51.7, the acts underlying plaintiff's claims fall into the first or second of these categories. The first five causes of action are based upon defendant's reports of child abuse to "people who were legally required to report any child abuse allegations . . . in an attempt to manufacture corroboration" for his own false allegations. That is, the statements were designed to prompt

action by law enforcement or child welfare agencies. Communications that are preparatory to or in anticipation of commencing official proceedings come within the protection of the anti-SLAPP statute. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [54 Cal.Rptr.2d 830]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109–1110 [81 Cal.Rptr.2d 471, 969 P.2d 564]; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1009 [113 Cal.Rptr.2d 625].) Thus, defendant's reports of child abuse to persons who are bound by law to investigate the report or to transmit the report to the authorities are protected by the statute. (§ 425.16, subd. (e)(2).) The seventh cause of action for malicious prosecution is recognized as being susceptible to an anti-SLAPP motion. (*Jarrow Formulas, Inc. v. LaMarche, supra*, 31 Cal.4th at p. 741.) And the eighth cause of action for abuse of process is also subject to the statute since it arises from the exercise of the right of petition.

The sixth cause of action, however, does not describe conduct arising from a protected activity. This cause of action for violation of Civil Code section 51.7 is based upon allegations that defendant committed violence and made threats of violence against plaintiff based upon his religion. These allegations do not describe acts in furtherance of defendant's rights of petition or free speech and are not encompassed by the anti-SLAPP statute. (§ 425.16, subd. (e).) The trial court was correct in denying defendant's motion as to the sixth cause of action. As to the remaining causes of action, we proceed to the second prong of the analysis.

2. *Plaintiff's Likelihood of Success on the Merits*

 In the second prong of the anti-SLAPP analysis the plaintiff's burden of demonstrating a probability of prevailing is subject to a standard similar to that used in deciding a motion for nonsuit, directed verdict, or summary judgment. (*ComputerXpress, Inc. v. Jackson, supra*, 93 Cal.App.4th at p. 1010.) The court determines only whether the plaintiff has made a prima facie showing of facts that would support a judgment if proved at trial. (*Ibid.*) We grant the motion if the plaintiff fails to produce evidence to substantiate his claim or if the defendant has shown that the plaintiff cannot prevail as a matter of law. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].)

Defendant argues that, for several reasons, plaintiff's causes of action fail as a matter of law. We begin our analysis by considering defendant's legal challenge to the malicious prosecution cause of action.

## a. *The Seventh Cause of Action for Malicious Prosecution*

Defendant argues that as a matter of policy a petition for an injunction prohibiting harassment (§ 527.6) is not a proper basis for a malicious prosecution claim. To date, no published opinion has expressly ruled upon the question. (See *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 651 [24 Cal.Rptr.3d 619].)

Malicious prosecution has been termed a "disfavored cause of action." (*Sheldon Appel, supra*, 47 Cal.3d at p. 872.) The original reason for that is that when the tort was based upon criminal prosecutions there was concern that the threat of later civil liability would discourage ordinary citizens from reporting suspected criminal activity. (*Id.* at p. 872, fn. 5.) The tort has not risen in favor since its extension to civil law. If anything, the trend is to limit its expansion.

There is concern about the volume of litigation in American courts, but the courts and the Legislature tend to agree that expanding the reach of malicious prosecution actions is not the best remedy for the problem. (*Sheldon Appel, supra*, 47 Cal.3d at p. 873.) The Supreme Court set forth its view of the issue in *Sheldon Appel*: "While the filing of frivolous lawsuits is certainly improper and cannot in any way be condoned, in our view the better means of addressing the problem of unjustified litigation is through the adoption of measures facilitating the speedy resolution of the initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct within that first action itself, rather than through an expansion of the opportunities for initiating one or more additional rounds of malicious prosecution litigation after the first action has been concluded." (*Ibid.*) The Legislature has implicitly concurred with this assessment by continuing to enact legislation to weed out patently meritless claims at an early stage and to impose sanctions in the initial lawsuit for frivolous or delaying conduct. (See, e.g., §§ 437c, 1038, 128.7, 425.16.)

*Bidna v. Rosen* (1993) 19 Cal.App.4th 27 [23 Cal.Rptr.2d 251] (*Bidna*) followed the reasoning of *Sheldon Appel* and refused to extend the tort of malicious prosecution to motions and orders to show cause in family law proceedings. *Bidna* identified four good reasons for drawing this bright-line rule. Three of those are pertinent here.[2] First, family law proceedings have "a unique propensity for bitterness" that makes it difficult to distinguish a malicious motion from an ordinary one. Second, the family law court has authority to discourage frivolous tactics within the underlying litigation by

---

[2] *Bidna's* fourth reason was that the availability of malicious prosecution actions would raise malpractice insurance premiums for family law lawyers. (*Bidna, supra*, 19 Cal.App.4th at pp. 35–36.)

imposing attorney fee awards as sanctions for frivolous conduct. Third, family law matters often require a special sensitivity and flexibility in crafting remedies. The threat that a litigant will be subject to a malicious prosecution action increases the risk of asking for any particular remedy and decreases the likelihood of obtaining effective relief. (*Id.* at p. 35.)

On the other side of the equation, *Bidna* noted that exempting family law proceedings from the scope of a malicious prosecution claim would deprive litigants of a means of redress in some of the most egregious cases. The court concluded, however, that the remedy for egregious conduct "is for the family law bench to nip it in the bud with appropriate sanctions, not to expand tort liability for malicious prosecution to the family law bar." (*Bidna, supra,* 19 Cal.App.4th at pp. 29, 30, 36.)

Another type of proceeding exempted from the scope of a malicious prosecution claim is a small claims action. (*Pace v. Hillcrest Motor Co.* (1980) 101 Cal.App.3d 476, 479 [161 Cal.Rptr. 662] (*Pace*); see § 116.110 et seq.) *Pace* observed that the Legislature's intent in enacting the small claims process was to provide a simple and expeditious means to settle disputes over small amounts because ordinary litigation involved so much time and expense that legal resolution of such disputes was impractical. (*Pace, supra,* 101 Cal.App.3d at p. 478.) The Legislature designed small claims proceedings "to function quickly and informally." (*Id.* at p. 479.) "To permit an action for malicious prosecution to be grounded on a small claims proceeding would frustrate the intent of the Legislature in adopting an expeditious and informal means of resolving small disputes, would inject into a simple and accessible proceeding elements of time, expenses, and complexity which the small claims process was established to avoid, and would require a prudent claimant to consult with an attorney before making use of this supposedly attorney-free method for settling disputes over small amounts." (*Ibid.*)

 The reasoning of *Bidna* and *Pace* is applicable here. Section 527.6 is used where the victim has been stalked, threatened or otherwise seriously harassed. (*Grant v. Clampitt* (1997) 56 Cal.App.4th 586, 591 [65 Cal.Rptr.2d 727].) There are many cases that exemplify the bitter and even irrational disputes that arise under section 527.6. (See *Kobey v. Morton* (1991) 228 Cal.App.3d 1055 [278 Cal.Rptr. 530] [defendant hired private detective to follow victim, threatened victim's children, falsely accused victim of having AIDS]; *Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105 [274 Cal.Rptr. 447] [defendant stalked victim, made numerous phone calls, sent threatening letters, threatened to commit suicide in victim's presence]; *Elster v. Friedman* (1989) 211 Cal.App.3d 1439 [260 Cal.Rptr. 148] [neighbors played stereo at high volume, made false reports to animal regulation officers about victims, repeatedly rang their doorbell]; *Oriola v. Thaler* (2000) 84 Cal.App.4th 397

[100 Cal.Rptr.2d 822] [defendant made 25 to 40 "crank calls" to victim every day].) In such highly charged circumstances a successful defendant may be inclined to counter with a civil action against the unsuccessful plaintiff. Yet, as in family law disputes, the background of bitterness would make it difficult to distinguish between a malicious petition and one that is not malicious. Further, just as in family law matters, section 527.6 provides for attorney fees as sanctions for a frivolous petition. (§ 527.6, subd. (i).) Indeed, after refusing to grant defendant's petition for an injunction, the San Mateo County court sanctioned defendant by awarding plaintiff more than $12,000 in attorney fees.

It is true that by declining to extend the malicious prosecution tort to unsuccessful section 527.6 petitions we deprive an aggrieved defendant of a remedy for some of the harm he or she has suffered as a result of a malicious petition. However, the harm should be fairly minimal. Section 527.6 was passed to provide quick relief to harassment victims threatened with great or irreparable injury. (*Smith v. Silvey* (1983) 149 Cal.App.3d 400, 405 [197 Cal.Rptr. 15].) Like a small claims action, a section 527.6 petition is designed to be processed simply and expeditiously. A petition is filed, a hearing is held, normally within a few weeks, and an order is made or not made. (§ 527.6, subd. (d).) As a result of this expedited process a defendant is not usually likely to incur substantial legal fees. There is no risk of incarceration or financial ruin. At worst, he or she will simply be ordered to stop doing something. And to the extent the defendant has grievances of his or her own, section 527.6 expressly permits a cross-complaint. (§ 527.6, subd. (d).)

Another important consideration is that a section 527.6 petition is not an ordinary civil action. (See *Nicholson v. Fazeli* (2003) 113 Cal.App.4th 1091, 1099 [6 Cal.Rptr.3d 881] [declining to extend *Bidna* to ordinary civil actions arising within family law proceedings].) The statute provides for an action to be completed in a matter of weeks and incorporates an expectation that victims may often seek relief without the benefit of a lawyer. (See § 527.6, subds. (d) [trial court makes an "independent inquiry" into the facts] & (m) [Judicial Council forms to be "simple and concise].") Permitting a malicious prosecution claim to follow an unsuccessful section 527.6 petition would frustrate this streamlined procedure. The prudent plaintiff would seek legal advice before filing a petition. The risk of subsequent litigation might dissuade victims of serious harassment from seeking the remedy. Those that were not discouraged would be subject to the possibility of serious financial harm in the future. On balance, these concerns outweigh the concern that an aggrieved defendant might be deprived of the additional remedies a malicious prosecution action would provide in egregious situations.

We recognize that the Supreme Court has recently explained that just because malicious prosecution suits are disfavored they should not be barred for that reason alone. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 349 [9 Cal.Rptr.3d 497, 9 P.3d 497, 83 P.3d 497].) Our conclusion, however, is not based solely upon the disfavored status of the tort. We are concerned with the sensitive and emotionally charged nature of a section 527.6 petition and the "unending roundelay of litigation" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 214 [266 Cal.Rptr. 638, 786 P.2d 365]) that is likely to ensue if a successful defendant is able to counter with a malicious prosecution suit. Our conclusion is also based upon the fact that in enacting section 527.6 the Legislature has provided for speedy resolution of the initial suit and has authorized the imposition of sanctions for frivolous or delaying conduct within the first action. As the Supreme Court has counseled, this is the preferable means for discouraging frivolous lawsuits. (See *Sheldon Appel*, *supra*, 47 Cal.3d at p. 873.)

■ We conclude that the unsuccessful filing of a petition for an injunction under section 527.6 may not form the basis for a malicious prosecution action. Since plaintiff's cause of action for malicious prosecution is based upon defendant's unsuccessful section 527.6 petition, the cause of action fails as a matter of law. It follows that the trial court erred in denying defendant's special motion to strike as it applied to the seventh cause of action.

b. *The Litigation Privilege*

Turning to the remaining causes of action, defendant contends that plaintiff cannot prevail as a matter of law because defendant's communications are subject to the litigation privilege of Civil Code section 47(b).[3] He argues that Penal Code section 11172(a), which imposes liability for knowingly filing false reports of child abuse, does not override the litigation privilege because it is unconstitutional or otherwise invalid. We reject these arguments.

i. *Penal Code Section 11172(a) Is Not Unconstitutional*

■ Penal Code section 11172(a) is part of the Child Abuse and Neglect Reporting Act. (Pen. Code, § 11164 et seq.) Penal Code section 11172(a) provides: "No mandated [child abuse] reporter shall be civilly or criminally liable for any report required or authorized by this article . . . . Any other person reporting a known or suspected instance of child abuse or neglect shall not incur civil or criminal liability as a result of any report authorized by this article unless it can be proven that a false report was made and the

---

[3] Civil Code section 47(b) provides in pertinent part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law."

person knew that the report was false or was made with reckless disregard of the truth or falsity of the report, and any such person who makes a report of child abuse or neglect known to be false or with reckless disregard of the truth or falsity of the report is liable for any damages caused." Thus, Penal Code section 11172(a) provides that those who knowingly or recklessly file false child abuse reports may be sued for a knowingly false report of abuse unless they are among the persons listed as mandatory reporters. A parent is not a mandatory reporter. (Pen. Code, § 11165.7.) Defendant argues that this disparity in protection is a content-based regulation of speech and is impermissible under the First Amendment of the United States Constitution.[4]

■ Defendant argues that even though a knowingly false statement of fact is not constitutionally protected speech, Penal Code section 11172(a) impermissibly discriminates by imposing liability only upon voluntary reporters. We perceive no free speech issue under these circumstances since the statute does not discriminate based upon the content of the speech. *R.A.V. v. St. Paul* (1992) 505 U.S. 377, 382 [120 L.Ed.2d 305, 112 S.Ct. 2538] (*R.A.V.*), upon which defendant relies, does not alter our conclusion. *R.A.V.* struck down an ordinance that made it a crime to place an object (such as a burning cross or a Nazi swastika) upon public or private property if one has reasonable grounds to know that the object arouses " 'anger, alarm or resentment in others on the basis of race, color, creed, religion or gender . . . .' " (*Id.* at p. 380.) Although the speech at issue (fighting words) was not constitutionally protected, *R.A.V.* held that it was impermissible to punish only fighting words based on race, color, creed, religion, or gender. (*Id.* at p. 391.) Here, the Legislature has not selectively punished any particular category of false child abuse reports. All knowingly false child abuse reports are subject to liability unless a mandated reporter makes the report.

Even if imposing liability only upon nonmandated reporters may be construed as content-based regulation, such a scheme is not unconstitutional. As *R.A.V.* explained, a government is not prohibited from selectively discriminating within a proscribable class of speech in all cases. "The rationale of the general prohibition [upon governmental regulation of speech], after all, is that content discrimination 'raises the specter that the Government may

---

[4] Defendant did not raise this constitutional issue below. The general rule is that appellate courts will not consider matters raised for the first time on appeal. (*Bayside Timber Co. v. Board of Supervisors* (1971) 20 Cal.App.3d 1, 5 [97 Cal.Rptr. 431].) However, appellate courts may consider such matters when the issue relates to questions of law only or where the public interest or public policy is involved. (*Ibid.*) A related concern is the "long-established rule that an appellate court will not enter upon the resolution of constitutional questions unless absolutely necessary to a disposition of the appeal." (*Id.* at pp. 5–6.) Here, the facial constitutionality of Penal Code section 11172(a) is a pure question of law and is an issue of public concern. Further, much of plaintiff's argument turns upon the validity of this statute. Thus, in order to fairly dispose of the appeal we shall pass upon the constitutional issue.

effectively drive certain ideas or viewpoints from the marketplace,' [citations]. But content discrimination among various instances of a class of proscribable speech often does not pose this threat." (*R.A.V.*, *supra*, 505 U.S. at pp. 387–388.) One such instance is where "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot." (*Id.* at p. 390.)

*People v. Stanistreet* (2002) 29 Cal.4th 497, 510 [127 Cal.Rptr.2d 633, 58 P.3d 465], held that Penal Code section 148.6, which makes it a misdemeanor to file a knowingly false allegation of misconduct against a peace officer, is a permissible regulation of proscribable speech. Among other things, *Stanistreet* concluded that there was no realistic possibility that the statute would suppress ideas, pointing out that the subject (complaints of misconduct against peace officers) is actually a *favored* subject as evidenced by the fact that all such reports must be investigated. Similarly, Penal Code section 11172(a) *encourages* child abuse reporting by granting absolute immunity to mandatory reporters. It imposes liability on voluntary reporters merely to discourage knowingly false reports. Indeed, this is the only speech that defendant suggests may be discouraged. He identifies no *ideas,* nor can we conceive of any, that Penal Code section 11172(a) might tend to suppress.

Defendant refers us to *Walker v. Kiousis* (2001) 93 Cal.App.4th 1432, 1447 [114 Cal.Rptr.2d 69], which held that Civil Code section 47.5 is unconstitutional. Civil Code section 47.5 permits a peace officer to pursue a defamation claim against a person who filed a false report of the officer's misconduct. Like Penal Code section 11172(a), therefore, Civil Code section 47.5 makes a person liable for a communication that would otherwise be protected by the litigation privilege. Civil Code section 47.5 differs from Penal Code section 11172(a), however, because it does not discriminate based upon the speaker, but (arguably) upon the content of the speech. Furthermore, another division of the same district Court of Appeal has disagreed with *Walker,* ruling that Civil Code section 47.5 poses no realistic possibility that it will result in the official suppression of ideas. (*Loshonkohl v. Kinder* (2003) 109 Cal.App.4th 510, 516 [135 Cal.Rptr.2d 114].)[5] Likewise, we conclude that Penal Code section 11172(a) poses no such risk. It is not an unconstitutional content-based regulation of speech.

---

[5] Defendant also argues that there is no reason to exclude parents from the absolute immunity granted to mandated reporters. Defendant offers no legal basis for revising the Legislature's judgment on this point. Accordingly, we decline to consider the question. (See Cal. Const., art. III, § 3.)

ii. *Penal Code Section 11172(a) Overrides the Litigation Privilege*

⬛ Defendant also argues that even if we find Penal Code section 11172(a) to be constitutional, the section does not trump the absolute privilege of Civil Code section 47(b). Defendant acknowledges that *Begier v. Strom* (1996) 46 Cal.App.4th 877, 885 [54 Cal.Rptr.2d 158] (*Begier*) held that the provision in Penal Code section 11172(a) imposing liability upon voluntary reporters for knowingly filing false reports of child abuse overrides the litigation privilege of Civil Code section 47(b). He contends, however, that *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 355 [7 Cal.Rptr.3d 803, 81 P.3d 244] (*Hagberg*) has called that holding into question. We disagree.

The issue in *Hagberg* was whether statements made to law enforcement personnel about suspected criminal activity are subject to the qualified privilege of Civil Code section 47, subdivision (c), which grants immunity for certain communications made without malice, or whether such reports were absolutely privileged under Civil Code section 47(b), which applies regardless of malicious intent. *Hagberg* concluded that such statements made to law enforcement personnel are absolutely privileged. (*Hagberg, supra*, 32 Cal.4th at p. 355.)

Like Civil Code section 47, Penal Code section 11172(a) grants an absolute privilege in some situations and a qualified privilege in others. The dissent in *Hagberg* argued that the Legislature's grant of absolute immunity for mandatory reporters under Penal Code section 11172(a) would be unnecessary if the absolute privilege of Civil Code section 47(b) applies in such cases already. (*Hagberg, supra*, 32 Cal.4th at p. 379.) The majority recognized the redundancy but was not convinced that it should affect the result: "Penal Code section 11172 was part of a comprehensive scheme in which the Legislature sought to increase substantially the reporting of a specific type of crime, but at the same time to provide potential subjects of such increased reporting with explicit civil protection against malicious false reports. . . . Such an exceptional and comprehensive scheme, in which the Legislature has balanced conflicting interests, does not reflect an attempt by the Legislature to deal generally with the subject of the potential civil liability, if any, faced by persons who report crime to the police." (*Id.* at p. 371, fn. 6, citation omitted.) There is nothing in this response or elsewhere in the Supreme Court's discussion that casts doubt upon the validity of Penal Code section 11172(a) or upon the conclusion of *Begier, supra,* 46 Cal.App.4th 877 that the liability it imposes upon voluntary reporters overrides the litigation privilege.

### iii. *Penal Code Section 11172(a) Applies to Defendant's Reports*

Defendant further contends that even if Penal Code section 11172(a) trumps the litigation privilege, it does so only with respect to statements made to the agencies listed in the Child Abuse and Neglect Reporting Act, i.e., "to any police department or·sheriff's department, . . . county probation department, . . . or the county welfare department." (Pen. Code, § 11165.9.) According to defendant, therefore, his communications to school personnel and others in connection with the family law proceedings remain privileged under Civil Code section 47(b). Again we disagree.

Although we have found no authority directly on point, there are cases that hold that the immunity extended to mandatory reporters encompasses more than just the act of reporting the suspected abuse. For example, *Storch v. Silverman* (1986) 186 Cal.App.3d 671, 681 [231 Cal.Rptr. 27], held that absolute immunity extends to mandated reporters who assist in identifying instances of child abuse but do not personally report it to the authorities. The court's reasoning was that limiting immunity to the person who actually made the report would defeat the purpose of encouraging reports of child abuse. (*Ibid.*; and see *Krikorian v. Barry* (1987) 196 Cal.App.3d 1211, 1223 [242 Cal.Rptr. 312].)

■ The Legislature crafted the disparate treatment of mandated and voluntary reporters in order to balance "the public interest in ferreting out cases of child abuse" against "the policy of protecting the reputations of those who might be falsely accused." (*Begier, supra,* 46 Cal.App.4th at p. 885.) That is, the purpose of imposing liability upon voluntary reporters is to discourage knowingly false reports. Just as *Storch* concluded that immunity is not limited to the mere act of reporting, we conclude that the imposition of liability is not limited to voluntary reports made to the listed agencies but includes reports made to persons who are legally required to transmit such reports to the listed agencies. To hold otherwise would essentially nullify the balance struck by the Legislature in determining when liability should attach. (See *ibid.*) Accordingly, we reject defendant's claim that the liability imposed by Penal Code section 11172(a) does not apply to him.

In sum, the litigation privilege of Civil Code section 47(b) does not protect defendant from the liability imposed by Penal Code section 11172(a).

c. *The Fourth Cause of Action for Negligent Infliction of Emotional Distress*

Defendant contends that the facts supporting plaintiff's cause of action for negligent infliction of emotional distress do not fall within accepted categories of the "direct victim" version of the tort. (See *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 869 [2 Cal.Rptr.2d 79, 820 P.2d 181]; *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 923 [167 Cal.Rptr. 831, 616 P.2d 813]; *Burgess v. Superior Court* (1992) 2 Cal.4th 1064 [9 Cal.Rptr.2d 615, 831 P.2d 1197].) Although plaintiff designated the fourth cause of action as a negligence claim, his allegations are that defendant's conduct "constituted the highest level of negligence and gross negligence" and that it was "fraudulent, malicious, oppressive, willful, despicable, cruel, unjust, contemptible, reprehensible, and wanton, and was specifically intended to oppress Plaintiff's rights." This is in substance a claim for reckless infliction of emotional distress, which is not the same as a claim for negligent infliction of emotional distress. (*Christensen v. Superior Court, supra*, 54 Cal.3d at p. 904; and see *Ess v. Eskaton Properties, Inc.* (2002) 97 Cal.App.4th 120, 129 [118 Cal.Rptr.2d 240].) Thus, it is immaterial that plaintiff may have failed to allege facts to support a negligence claim.

d. *The Eighth Cause of Action for Abuse of Process*

Defendant also argues that plaintiff's cause of action for abuse of process is insufficient as a matter of law because it does not contain the requisite elements. Defendant misreads the claim.

There are two main elements of a cause of action for abuse of process: " ' "first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding." ' " (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168 [232 Cal.Rptr. 567, 728 P.2d 1202].) "Process is action taken pursuant to judicial authority. . . . [¶] Merely obtaining or seeking process is not enough; there must be subsequent abuse, by a misuse of the judicial process for a purpose other than that which it was intended to serve. [Citations.] The gist of the tort is the improper use of the process *after it is issued.*" (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 530–531 [3 Cal.Rptr.2d 49].)

Plaintiff's eighth cause of action alleges that defendant obtained a TRO by falsely representing to the court that plaintiff was being investigated for child abuse. The cause of action goes on to allege that after the court denied defendant's request for a permanent injunction he nevertheless referred to the TRO to corroborate his allegations when he spoke with others about plain-

tiff's alleged abuse. Thus, the element of improper use is satisfied by the allegation that defendant improperly used the TRO after it was issued.

### e. *Plaintiff's Evidence*

We finally come to the question of whether plaintiff has demonstrated a probability of prevailing upon the six remaining causes of action. Before turning to plaintiff's evidence we first consider defendant's concern that the trial court did not rule on his evidentiary objections.

Plaintiff submitted three declarations—his own declaration, Zaidi's declaration, and the declaration of San Mateo County Sheriff's Deputy Dwayne K. Earles. Defendant raised over 200 separate written objections to this evidence. The trial judge did not make specific formal rulings on each individual objection. Rather, when defendant's counsel orally reminded the court that it had not ruled on his objections the court answered: "By implication those have been overruled and sustained in my order." The court's written order states: "[Plaintiff] has submitted the declarations of himself, of Momina Zaidi, and of [S]an Mateo County Sheriff's Deputy Dwayne K. Earles. For purposes of discussion of this motion only, the Court will not consider Deputy Earle's declaration." Defendant argues that this ruling was inadequate and he urges this court to make the specific evidentiary rulings he sought below. Plaintiff contends that defendant did not obtain a ruling because he failed to press his objections with sufficient vigor and, therefore, that he waived the objections. (See *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

Although the trial court did not rule upon each of defendant's objections individually, the court did make a blanket ruling of sorts. That is, in expressly declining to consider the Earles declaration the court implicitly sustained defendant's objections to that evidence. But even though defendant failed to obtain a ruling on his remaining objections, we do not believe he waived the objections. Defendant filed written objections and orally requested a ruling. He cannot be faulted merely because the trial court did not provide the response he sought. (See *City of Long Beach v. Farmers & Merchants Bank of Long Beach* (2000) 81 Cal.App.4th 780, 785 [97 Cal.Rptr.2d 140], holding evidentiary objections preserved where further request for ruling would have been a fruitless or idle act.) Furthermore, given that our standard of review is de novo and that the parties have had ample opportunity to address the issue, it would be unnecessary and unfair in these circumstances to consider the objections waived. (*Thomas v. Quintero, supra,* 126 Cal.App.4th at p. 656.) We conclude that the evidence contained in plaintiff's and Zaidi's declarations is part of the record on appeal and that defendant did not waive his evidentiary objections by failing to press more strenuously for a ruling.

■ Although defendant did not waive the objections below, he does not describe them in detail on appeal. He states only that the declarations are "full of argument, conclusions, opinions, hearsay and irrelevant information" and directs us to the papers he filed in the court below. He further argues that if we sustain all of his objections there would remain insufficient admissible evidence to support a prima facie case. We think a more efficient approach would begin with a search for admissible evidence. This is not a summary judgment case like *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 229, 243–244 [114 Cal.Rptr.2d 151], where the appellate court was forced to rule on the objections. (See also *Vineyard Springs Estates v. Superior Court* (2004) 120 Cal.App.4th 633, 642–643 [15 Cal.Rptr.3d 587], directing the trial court to make the requested evidentiary rulings.) In a summary judgment motion the crucial question is whether the evidence presents a material factual dispute. In that situation the admissibility of a single fact can be dispositive. In contrast, in order to defeat an anti-SLAPP motion the plaintiff needs to submit only enough admissible evidence to show that he has a probability of prevailing on his claims. "[A] probability of prevailing is established if the plaintiff presents evidence establishing a prima facie case which, if believed by the trier of fact, will result in a judgment for the plaintiff." (*Mattel, Inc. v. Luce, Forward, Hamilton Scripps* (2002) 99 Cal.App.4th 1179, 1188 [121 Cal.Rptr.2d 794].) The trial court clearly denied defendant's motion because it found plaintiff's evidence sufficient to establish a prima facie case. It follows that in conducting our de novo review we need to identify only sufficient admissible evidence to support the trial court's conclusion. The admissibility of any other evidence is immaterial. Accordingly, we need not consider each of defendant's objections in detail.

■ Before we consider the evidence, we review the elements that plaintiff must prove to establish his claims. The first and second causes of action for libel and slander require evidence of false and unprivileged publications that have a tendency to injure a person in the manner described in the statutes. (Civ. Code, §§ 45, 46.) ■ The third and fourth causes of action for intentional and reckless infliction of emotional distress must be supported by evidence of "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (*Cervantez v. J.C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975]; and see *Ess v. Eskaton Properties, Inc., supra,* 97 Cal.App.4th at p. 129.) ■ The sixth cause of action for violation of Penal Code section 11172(a) requires evidence that defendant made knowingly false reports of child abuse. Finally, the eighth cause of action for abuse of process requires evidence of an ulterior purpose and a willful act in the use of the process not proper in the

regular conduct of the proceeding. (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., supra,* 42 Cal.3d at pp. 1168–1169.)

Turning finally to the evidence, we conclude that it is sufficient to meet plaintiff's burden. Defendant admits that he made reports to mandatory reporters, law enforcement, and other third parties in which he accused plaintiff of physically and mentally abusing defendant's children. The crucial evidence that plaintiff submits is that he never abused the children. Zaidi provides support for the element of malice and outrageous conduct in her description of defendant's threats and abusive behavior. Plaintiff and Zaidi both recount numerous instances in which they observed or experienced defendant's abusive and antagonistic behavior toward plaintiff. Evidence to support the abuse of process claim is Zaidi's statement that sometime after the San Mateo County court denied defendant's petition for a permanent injunction, she was present when defendant told a third party that plaintiff was subject to a restraining order preventing him from being near the children. Finally, plaintiff describes the harm he has suffered as including sleeping and eating disturbances, fear for his safety and the safety of his own son, fear of being arrested, anxiety over his finances and reputation, loss of time and productivity at work, headaches, and panic attacks.

None of defendant's objections applies to this evidence. The evidence is based upon the declarants' personal knowledge. It does not contain argument, opinion, or legal conclusions and it is unquestionably relevant. The evidence is sufficient to permit a jury to find that defendant misused the results of court proceedings, made knowingly false reports of child abuse, and caused plaintiff to suffer serious mental distress. In short, plaintiff has demonstrated a probability of prevailing on his claims for defamation, emotional distress, violation of Penal Code section 11172, and abuse of process.

### D. CONCLUSION

Plaintiff's fifth cause of action for violation of Civil Code section 51.7 is not subject to a section 425.16 special motion to strike and the trial court was correct in denying defendant's motion as to it. Of the remaining causes of action, plaintiff has shown a probability of prevailing on all but the seventh— his cause of action for malicious prosecution. As to the seventh cause of action, plaintiff cannot prevail because a petition for an injunction prohibiting harassment (§ 527.6) cannot form the basis for a malicious prosecution claim. The trial court erred, therefore, in denying defendant's anti-SLAPP motion with respect to the seventh cause action but was correct in denying it as to the remaining claims.

## E. DISPOSITION

The order of the superior court denying defendant's special motion to strike is reversed. The trial court is instructed to enter a new order granting defendant's motion in part and striking the seventh cause of action from the first amended complaint. The parties shall bear their own costs on appeal.

Rushing, P. J., and Elia, J., concurred.