Filed 1/11/16  Ware v. Tydell CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DAVID WARE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHARON TYDELL,<br><br>    Defendant and Appellant. | B262116<br><br>(Los Angeles County<br>Super. Ct. No. EC062818) |

    APPEAL from an order of the Superior Court of Los Angeles County.  John P. Doyle, Judge.  Reversed.


    Demler, Armstrong & Rowland, Robert W. Armstrong, David A. Ring, and Jenny S. Choi, for Defendant and Appellant.


    Law Offices of Alec J. Baghdassarian and Alec J. Baghdassarian for Plaintiff and Respondent.


_____

Plaintiff and respondent David Ware filed an action for defamation against defendant and appellant Sharon Tydell, based on Tydell's postings about Ware on the internet website "ripoffreport.com." The trial court denied Tydell's motion to strike the complaint as a Strategic Lawsuit Against Public Participation, commonly known as an anti-SLAPP motion. (§ 425.16.)[1] On appeal from that order, Ware challenges the adequacy of the appellate record, and Tydell challenges the trial court's finding that Ware showed a probability of prevailing on the merits of his action. We reverse.

## FACTUAL AND PROCEDURALBACKGROUND

In June 2011, Tydell agreed to rent a room in her home to Ware for $985 per month plus a $985 security deposit. Ware moved in on July 15, 2011, but things did not go well between landlord and tenant and Ware moved out on September 1, 2011. A dispute over return of his security deposit led Ware to file a small claims action against Tydell. Tydell cross-complained and in March 2012, judgment was entered in Tydell's favor. Following a trial de novo on appeal, the judgment was amended to award Tydell costs. Ware moved for the judgment to be vacated due to extreme financial hardship, but did not appear at the scheduled June 22, 2012 hearing. The motion was denied, and the judgment remains unsatisfied.

On November 1, 2012, Tydell initiated a series of postings (threads) critical of Ware on the "ripoffreport.com" internet website (Report No. 963525). Tydell began her thread using the pseudonym "Anonymous One," and posted the following under "Cross-Border Scams":

> *"David Glen Ware David Ware; David G. Ware; The Host LA Real Estate Group; David Ware, Keller Williams Commercial Real Estate, Larchmont; David Ware, Regal Mortgage Company Scammer, Conman, Crook, Disreputable, Liar, Fraud Los Angeles, California*
>
> "David Ware is a scammer. He's lived in Texas, New Mexico, Arizona, and now Southern California, and scammed and conned his way through all of

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

*these states.* In Arizona, he ran a mortgage company called Regal Mortgage got his business and broker's license revoked, and was sued by the state, losing a judgment of $10,000 and paid nothing.

"He also rented an office failing to pay rent, lost that judgment as well, and never paid that either. *He then skipped out to Southern California. Where he continued to rip people off.* He moved to an apartment in Pasadena, where he had an Unlawful Detainer filed against him. He left the apartment owing the landlord almost $7,000 which he never paid (Superior Court of California, County of Los Angeles, Case No. PAS 11U00542). *He then proceeded to set his SUV on fire* after not paying car loan for years, had no insurance, and was ultimately unable to register it. He took out an insurance policy after the fact and unsuccessfully attempted to make a claim. *He was renting a room at the time and unsuccessfully attempted to make a claim on the homeowner's insurance for the contents of the vehicle.* He then rented a car under the homeowner's name and proceeded to get parking tickets on it, which he never paid. Upon being kicked out of the house, he filed an erroneous small claims suit against the homeowner, got counter-sued, lost, and again failed to pay the judgment. He has numerous other judgments against him, and continues to slither and scam his way through life.

"Steer clear of David Ware. He is a real estate agent in Los Angeles, so BeWare of David Glenn Ware!" (Emphasis and italics added.)

Later that day, Tydell posted on the same thread:

"**Another Complaint Filed Against David G. Ware**

Check out a prior Ripoff Report on David G. Ware: #369366"

On November 6, 2013, Ware posted the following rebuttal to Tydell's posts:

"First of all, this complaint was not from anyone we have ever done business with, but rather a bitter acquaintance. [¶] Secondly, I had the choice of funding my child's education, or paying a state I was never going to do business with $10,000 for 'routine clerical errors' (their terminology); I chose the former. [¶] I have never lived in an apartment in Pasadena. My family, including a 2 yr and 6 yr old rented a home and gave a 30 day notice to vacate, and forgave $3,300 deposit when we moved after fulfilling a one year lease. The landlords wanted $6,000 to paint the property, which I think is a bit unreasonable. [¶] You be the judge."

3

Tydell did not immediately respond to Ware's rebuttal and there were no further posts in this series for several months.

The ceasefire ended shortly after on March 16, 2014, when a third party known as J&J initiated Report No. 1131102. J&J's thread was also critical of Ware's business practices. J&J's Report No. 131102 began with the following post:

> "Host Cars LA David Ware Company Owner CEM I was a driver for this company. Glendale California.
>
> "This guy, David Ware did not pay me his employee working and burning my but for him for over 60 hours per week, I drove over 125 miles per day for this guy. Worked over 60 hours per week and when I said I wanted to quit because Uber was threatening to deactivate my account and the money he was paying I found out later would turn out to be less then minimum wage. Watch out don't work for this shady guy. I'm going to report Host Cars LA LLC to the Labor Board/Dept. of Labor on Monday and try to get my money he did not pay me. I am checkless and my rent is due. I told this man but he does not care. This man is unethical and has no compassion for hard working individuals. I think he only cares about money or he must be broke as h*** that he can't even pay me the measly $400 he said he would pay me for working over 60 hours a week! That's less than minimum wage. and this is very illegal. Please someone help me spread the word on this d***."

On April 25, 2014, Tydell posted the following comment on J&J's post:

> "BeWare of David Ware!!
>
> "David Ware, David G. Ware, David Glenn Ware . . . all the same scammer! He's not even good at scamming because he's always broke and in debt. . . . but he'll cost you money and waste your time. He has numerous judgments against him that he doesn't pay and he doesn't care because his credit is awful and he lives by the saying: 'you can't bleed a rock.'
>
> "He's as slippery and slimy as they come! He has no morals whatsoever . . . He's rip off his own kids given the opportunity and then try to justify it! There are at least two other Ripoff Reports about this shady character #963525 and #369366. So Here Ye, Here Ye . . . Read All About David Ware so you don't become his next unaWare victim and if you see him, run don't walk, the other way!"

4

Tydell also reopened her earlier Report No. 963525 thread with the following post that refers both to Ware's earlier rebuttal and to J&J's post:

> "**David Ware Admits Claims Against Him**
>
> "This is great. David Ware admitted in his rebuttal that this Ripoff Report about him is right on as he validates two of the claims. He acknowledges having a judgment against him in the state of Arizona which he admits he never bothered to pay it. He then goes on to admit leaving a rental in Pasadena owing the landlord money (whether it was an apartment or a home is irrelevant . . . he skipped out owing the landlord and never paid what he owed, which was for back rent and damage he caused). David Ware has been involved in several businesses including real estate, mortgages (see Ripoff Report #369366 Regal, *Online Mortgage scam, thief, con-artist*, liar, ethically inept, *bait-and-switch*, terrible mortgage company Scottsdale Arizona), pay day loans, parking valet, and has gotten in trouble in all of them . . . now he's in the private transportation business (Host Cars LA in association with Uber) and he's already had another Ripoff Report posted about *him in regards to failing to pay a driver (Ripoff Report #1131102). Just think about how many others David Glen Ware has ripped off that you don't read about!!*" (Italics added.)

This report was updated on April 28, 2014.

## A.     *The Complaint*

On August 19, 2014, Ware filed the present lawsuit against Tydell. The gravamen of the complaint is that on April 25 and 28, 2014, Tydell posted allegedly false and defamatory statements on ripoffreport.com. Specifically, the complaint alleges that the italicized statements in the postings set out in full above, were defamatory.

## B.     *Tydell's Anti-Slapp Motion*

Tydell filed her anti-SLAPP motion on October 21, 2014. The gist of the motion was that (1) the challenged postings constituted protected activity and (2) it is not probable that Ware would succeed on the merits of his action for defamation. Regarding the probability of success prong, Tydell argued the defamation claim was time-barred because it was brought more than one year after the original November 1, 2012, posting

5

upon which the complaint is based. Even if not time-barred, Tydell argued the challenged statements were true and, in other respects, reflect Tydell's opinions, not libelous statements of fact.

Tydell's declaration in support of her anti-SLAPP motion recounted the following. Shortly after moving in, Ware told Tydell he was disputing a parking ticket on the theory that his car could not be moved because it had a dead battery; Tydell refused Ware's request that she write a letter to the court falsely stating that she had "jumped" the car. Also not long after moving in, without Tydell's consent, Ware told Tydell's house-guest that the guest could remain for two months for a fee.

On August 20, 2011, Tydell observed Ware lighting "something . . . in the front seat of his vehicle. Shortly thereafter, Mr. Ware came in but then quickly ran out announcing that his car was on fire." Two days later, Tydell saw a woman wearing an " 'arson and bomb squad' T shirt, examining the space on the street where" Ware's car was parked at the time of the fire.

The day of the fire, Ware told Tydell his children's sports equipment and his own golf clubs, which Ware said were worth a total of $2,000, had been destroyed in the fire. Two days later, Ware told Tydell to file a claim on her homeowner's insurance for the loss of those same items, but to value the items at $5,000. When Tydell refused, Ware became angry and said to her, " 'there would have been something in it for you, too,' " if she had allowed him to make the claim. Ware himself submitted a claim against Tydell's insurance, which was denied because the policy did not cover damage to property owned by tenants who were not related to the landlord. Tydell later saw a letter from GEICO to Ware, dated September 26, 2011. The letter, which is attached as an exhibit to Tydell's anti-SLAPP motion, states GEICO was denying Ware's claim for loss arising out of the fire "because the fire loss was reported to us as having occurred on 08/22/2011. On 08/22/2011 comprehensive coverage was added to the policy to be effective 08/23/2011. We have confirmed with the fire report the fire occurred on 08/20/2011 and there was not any comprehensive coverage on the policy as of the date of the loss. Therefore, there is no coverage for this loss."

6

In addition to the car fire, Tydell described another insurance related deception by Ware. Tydell agreed to let Ware remain living in the rented room until the end of September 2011, on the condition that Ware prove to Tydell that he had renter's insurance. But when Tydell called the insurance company to verify that the policy Ware showed her was in effect, she discovered there was no coverage because Ware had not paid the premium.

Tydell's declaration also recounted that on the day of the fire, Tydell allowed Ware to use her credit card to rent a car on the condition Ware remove her name from the car rental within two days. Ware missed the two-day deadline, and removed her name only after Tydell threatened to report the car stolen. Tydell later discovered that parking tickets had been issued to the car while in her name but in Ware's possession. Tydell paid the rental company a total of $206 for the two tickets. Tydell also paid $30 to replace a parking pass lost in the car fire. In an email to Ware dated October 7, 2011, Tydell demanded reimbursement for these costs. Ware replied by email: "Pay me money please owe me or else [*sic*]." This appears to be a reference to the disagreement over the amount of the security deposit Ware had paid, a dispute that was resolved several months later in Tydell's favor. In an email to Ware that same day, Tydell stated: "Pay me the $206 you owe me from the tickets you racked up or I'll see you in court & it won't be a secret."

Tydell's declaration also stated that while Ware was living in her home, Tydell "Googled" his name. She discovered Ware was involved in three legal proceedings, two in Arizona and one in Pasadena. Specifically: (1) in January 2008, a judgment of $1,474.31, plus costs and attorney fees, was entered against Ware in a forcible detainer action in Arizona; (2) in an August 2009 order, the Arizona Department of Financial Institutions revoked the mortgage broker's license of the Regal Mortgage Company and imposed a $10,000 civil penalty; Ware was president of the company; and (3) Ware was the defendant in a July 2011 unlawful detainer action relating to property in Pasadena.

Attached as exhibits to Tydell's declaration were printouts of the web pages reflecting the postings at issue and emails between herself and Ware; the car rental

7

agreement; the parking ticket notices from the car rental company; a receipt for the purchase of a replacement parking permit; the letter from GEICO denying Ware's claim; the letter from Tydell's insurance company denying Ware's claim; documents reflecting the three legal actions involving Ware which Tydell referred to in her post; and orders in the small claims court action in which Tydell prevailed against Ware.

## C.     Ware's Opposition to the Anti-SLAPP Motion

In opposition to the motion, Ware argued Tydell's postings did not constitute protected activity because "there is no First Amendment protection that permits an individual to falsely accuse another individual of being a thief." Even assuming the postings constituted protected activity, Ware argued he would probably prevail on the merits because Tydell's statements that Ware was a fraud, thief, con-artist, used bait-and-switch tactics and refused to pay debts are accusations of criminal conduct. But "there is nothing in [Tydell's] declaration in support of her moving papers that indicates that Mr. Ware stole anything from anyone. Thus, [Ware] has satisfied his burden, [of proving a probability of prevailing on the merits]."

In his declaration in opposition to the motion, Ware stated: "I am not a thief, scammer or fraud. I take exception to the statements made by Ms. Tydell and she has no admissible evidence to prove otherwise. She is bitter and uttered slanderous statements against me. [¶] I have been wronged by Ms. Tydell, She and I had some differences, but she then defamed me."

But Ware's one-page declaration rebuts specifically just two of Tydell's accusations. First, Ware stated that he paid Tydell a security deposit of $985. Second, Ware stated the claim that he "skipped out on a Judgment for over $6,000.00 in damages and rent due and owing for an apartment in Pasadena, California is false. I have never rented an apartment in Pasadena." Ware clarified that his family rented a "home" in Pasadena. When his family moved out, the landlord sought more than $6,000 to repair what the landlord claimed were damages in excess of ordinary wear and tear to the

8

premises.  In settlement of that dispute, Ware agreed that the landlord could keep Ware's $3,300 security deposit.[2]

Notably, Ware did not dispute Tydell's account of his request that Tydell make false representations to the court concerning his parking tickets.  Nor did Ware dispute Tydell's account of the car fire and related insurance claims, car rental, unpaid parking tickets and lost parking pass.  Ware also did not dispute that his broker's license was revoked in Arizona or that he has not paid the $10,000 civil penalty levied against him by that state.  Finally, Ware did not dispute that he had not paid the small claims court judgment in Tydell's favor.

*D.     The Order Denying Tydell's Anti-SLAPP Motion*

Following a hearing on December 5, 2014, the trial court denied Tydell's anti-SLAPP motion.  In a detailed 21-page written order, the trial court found the action was not time-barred because the original posting was republished as the result of Tydell's posting on April 25, 2014.  It found Tydell's statements constituted protected activity in that they fell within the rubric of consumer information under *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138 (*Chaker*).  However, the trial court found Ware had established a probability of prevailing on the merits based on his declaration:  " 'I am not a thief, scammer or fraud.  I take exception to the statements made by Ms. Tydell and she has no admissible evidence to prove otherwise.  She is bitter and uttered slanderous statements against me.' "  The trial court declined to award attorney's fees to Ware.

Tydell filed a timely notice of appeal on February 13, 2015.[3]

_____

[2]     Ware does not expressly state in his declaration whether this settlement was before or after legal proceedings were initiated by the Pasadena landlord, or whether a judgment was issued.

[3]     Because no document entitled "Notice of Entry" of judgment was served by the superior court clerk or either party, notice of appeal was timely because it was filed within 180 days after entry of the judgment.  (Cal. Rules of Court, rule 8.104(a)(1).

9

## DISCUSSION

### A.     *Sufficiency of the Record*

Ware's challenge to the sufficiency of the appellate record is without merit.  The Joint Appendix, filed on June 22, 2015, includes the operative complaint, Tydell's anti-SLAPP motion with supporting declarations and attached exhibits, Ware's opposition with supporting declarations, the trial court's written ruling and a timely notice of appeal. Contrary to Ware's assertion that Tydell relies only on a Clerk's Transcript, the appellate record includes two copies of the Reporter's Transcript of the December 5, 2014, hearing. Finding the record sufficient, we turn next to the merits of Tydell's contentions.

### B.     *Standard of Review*

The Legislature enacted the anti-SLAPP law in order to address the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  (§ 425.16, subd. (a).)  To that end, the statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

"Thus, there is a two-step process for evaluating an anti-SLAPP motion.  ' "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute.  [Citation.]" ' "  (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 822 (*Anapol*).)  Second, if the court finds the cause of action arose

10

from protected activity, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. (*Ibid.*)

The second step "is subject to a standard similar to that used in deciding a motion for nonsuit, directed verdict, or summary judgment. [Citation.] The court determines only whether the plaintiff has made a prima facie showing of facts that would support a judgment if proved at trial. [Citation.] We grant the motion if the plaintiff fails to produce evidence to substantiate his claim or if the defendant has shown that the plaintiff cannot prevail as a matter of law. [Citation.]" (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1570 (*Siam*); see *Traditional Cat Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 398 [in assessing the plaintiff's probability of prevailing on the merits, the court can "consider a defendant's opposing evidence to determine whether it defeats a plaintiff's case as a matter of law. [Citations.]"].)

" 'On appeal, [from the ruling on an anti-SLAPP motion,] we review the trial court's decision de novo, engaging in the same two-step process to determine, as a matter of law, whether the defendant met its initial burden of showing the action is a SLAPP, and if so, whether the plaintiff met its evidentiary burden on the second step. [Citation.]' [Citation.]" (*Anapol, supra*, 211 Cal.App. at p. 822.)

## C.     Step One:  Protected Activity

Ware challenges the trial court's conclusion that Tydell's postings on the ripoffreport.com website constituted protected activity under the anti-SLAPP statute. We agree with the trial court's determination of protected activity.

It is well settled that the "Internet is a classic public forum which permits an exchange of views in public about everything from the great issues of war, peace, and economic development to the relative quality of the chicken pot pies served at competing family restaurants in a single small neighborhood." (*Chaker, supra*, 209 Cal.App.4th at p. 1146.) An issue of public interest is any issue in which the public is interested. (*Ibid.*) The *Chaker* court found the defendant's statements about the plaintiff, which the defendant posted on the same ripoffreport.com website used here, constituted protected

11

activity within the meaning of the SLAPP statute because they were intended to warn other consumers about the plaintiff's character and business practices. (*Id.* at p. 1147.)

We come to the same conclusion here. Tydell's postings constituted protected activity because they were intended to warn other consumers about Ware's character and business practices.

### D.    Step Two:  Probability of Prevailing

Tydell makes three arguments in support of her contention that Ware has not established a probability of prevailing on the merits:  (1) the defamation claim is time-barred; (2) even if not time-barred, the challenged statements are true; and (3) in any case, they reflect Tydell's opinions. Although we find Ware's defamation claim is not time-barred, we conclude that he has not established a probability of prevailing on the merits of his claim.

#### 1.    The Action is Not Time Barred

The one-year statute of limitations governs actions for defamation. (See Code Civ. Proc., § 340, subd. (c).) Tydell argues that the action is time-barred because it is based on statements she originally made in November 2012, more than one year before the complaint was filed.

" 'The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. [Citation.]' " (*Sanders v. Walsh* (2013) 219 Cal.App.4th 855, 862 (*Sanders*).) A defamation cause of action accrues when the defendant communicates the defamatory statement to others. (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1237.) Each publication of a defamatory statement (i.e. communication to a third person) gives rise to a new cause of action. (*Id*. at p. 1242.) This rule applies each time the original defamer repeats or re-circulates his or her original remarks to a new audience. (*Ibid*.)

Here, Tydell initiated the Report No. 963525 thread on November 1, 2012, some 19 months before Ware filed his lawsuit. If that had been the only posting, Ware's complaint would be time-barred. But by adding a post to that thread on April 25, 2014,

12

Tydell republished her original post. The complaint filed on August 19, 2014, was filed within one year of the republication. As such, Ware's defamation action is not time-barred.

2. *Ware Has Not Shown a Probability of Prevailing on the Merits*

One element of a defamation cause of action is that the challenged statement contains a provable falsehood. (*Sanders, supra*, 219 Cal.App.4th at p. 862.) "In all cases of alleged defamation, whether libel or slander, the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose. [Citations.]" (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 646 (*Smith*).)

The "defendant need not justify the literal truth of every word of the allegedly defamatory matter. It is sufficient if the defendant proves true the *substance* of the charge, irrespective of slight inaccuracy in the details, 'so long as the imputation is substantially true so as to justify the "gist or sting" of the remark.' [Citations.]" (*Smith, supra*, at p. 647.) "The question whether a statement is reasonably susceptible to a defamatory interpretation is a question of law for the trial court. Only once the court has determined that a statement is reasonably susceptible to such a defamatory interpretation does it become a question for the trier of fact whether or not it was so understood. [Citations.]" (*Ibid.*)

Here, the undisputed evidence set forth in Tydell's declaration and attached exhibits defeats Ware's defamation case as a matter of law, because that evidence is sufficient to prove that the "gist or sting" of the challenged statements is true. Although Ware disputes in general Tydell's characterization of him as a "scammer, con-man, crook, disreputable, liar [and] fraud," Ware does not dispute the truth of the facts upon which Tydell bases her characterization. Those undisputed facts establish that Ware asked Tydell to make a false representation to the traffic court to help Ware avoid paying a parking ticket. The undisputed facts also establish that Ware pressured Tydell to make a fraudulent insurance claim for loss sustained in a car fire that he may have intentionally set, and that Ware himself made a claim that misrepresented the facts. Additionally, it is

13

undisputed that Ware did not return the rental car to Tydell or transfer it out of Tydell's name within the agreed upon time, even after Tydell demanded that he do so. That, too, is sufficient to establish a theft. (See 2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2000), Crimes Against Property, § 21, pp. 45–46 [evidence of larceny sufficient when the taking deprived "the victim in legal possession with a special interest in the property" of the benefit that was to have accrued].) Likewise, Ware does not dispute the unpaid small claims court judgment in Tydell's favor, the revocation of his broker's license in Arizona or the unpaid $10,000 civil penalty levied against him by that state. Based on these undisputed facts, Tydell has established as a matter of law that the gist or sting of her characterization of Ware as a "scammer, con-man, crook, disreputable, liar [and] fraud," was substantially true. To the extent the circumstances of the Arizona and Pasadena landlord/tenant disputes also contributed to Tydell's characterization of Ware, these statements were also substantially true. As such, Ware has not shown the requisite probability of prevailing on the merits of his defamation claim.[4]

---

[4] In his respondent's brief, Ware makes no effort to demonstrate that the record shows that Tydell's statements were not true. Essentially Ware argues only that he is not a "thief, scammer and fraud," without references to any evidence tending to demonstrate the falsity of these characterizations. This does not satisfy plaintiff's burden on the second prong of the motion to "produce evidence to substantiate his claim." (*Siam v. Kizilbash, supra*, 130 Cal.App.4th at p. 1570.)

Because we conclude that Ware failed to establish the falsity of the substance of the charges, we need not discuss whether some or all of them are more properly considered opinions rather than facts.

14

## DISPOSITION

The order denying Tydell's anti-SLAPP motion is reversed.  Tydell shall recover her costs on appeal.


                                                    RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.