Filed 4/21/22  C.S. v. R.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| C.S., | C092281 & C092300 |
| Plaintiff and Respondent, | (Super. Ct. No. CU20084574 & CU20084575) |
| v. | |
| R.M., | |
| Defendant and Appellant. | |
| J.M., | |
| Defendant and Appellant. | |

The primary issue in this case is the intersection of the civil harassment statute, Code of Civil Procedure section 527.6,[1] and the anti-SLAPP statute, section 425.16.[2]

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] "Anti-SLAPP" refers to the procedural vehicle provided by section 425.16 to strike legal actions intended as a "strategic lawsuit against public participation."  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)

1

Respondent C.S. filed requests for civil harassment restraining orders under section 527.6 against appellants R.M. and J.M. The requests alleged several instances of harassment including the filing of a false complaint about her dogs with animal control. After the trial court issued a temporary restraining order (TRO), appellants filed a section 425.16 motion to strike, asserting the anti-SLAPP statute applied due to the allegation regarding the complaint to animal control. The trial court denied the motion and, without a hearing, granted a protective order for two years.

Appellants contend the trial court erred in denying the motion to strike and extending the TRO without an additional hearing. Although the trial court's denial of the motion to strike was based in part on a mistake of fact, our de novo review finds the court reached the correct result, as the allegation regarding the complaint to animal control was incidental to the request, rather than forming a basis for liability. Nevertheless, because the protective orders against each appellant were unauthorized, we shall reverse those orders and remand for additional proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On March 26, 2020, respondent, without the assistance of counsel, filed two separate petitions for civil harassment restraining orders, each against the respective appellants, using the judicial counsel form. In the section for describing the harassment, respondent referred to an attached affidavit. The same affidavit was attached to both petitions and reads as follows:

"I am seeking protection against my neighbors [R.M. and J.M.]. I have lived next door to them since January 2019 when I purchased a home from [R.M.]. The most recent incident happened on the night of Friday, March 13, 2020. At approx[.] 8 pm[.] I was loading my vehicle, including my dogs, for a trip out of town. [L.M.] and her three children were present when the altercation began. I[t] was dark and foggy and I turned on my driveway and outdoor lights nearest to the garage. I went into the house to collect my belongings and upon returning outside I noticed my outdoor lights were turned off,

2

and at the time I witnessed [R.M.] driving away from the property line.  I turned my lights back on and within minutes [R.M.] and his wife [J.M.] approached the property line at a high rate of speed in their vehicle, flashing their lights and honking the car horn.  He was screaming and yelling while inside of the vehicle, his car came to an abrupt halt, he jumped out of his vehicle waiving his arms erratically, yelling my name in a threatening manner.  During this time I was at my vehicle in my driveway approx[.] 50 ft[.] from [R.M.].  I approached him on my side of the property staying about 6 ft[.] away in an attempt to try to deescalate the situation because young children were present.  I asked him why he turned off my driveway lights?  He was yelling, 'I heard the Lords voice when the lights came on.'  'You are an evil witch who possesses this mountain top and you are summoning evil to cursing my family and my life.  The Lord has talked to me and it has to be stopped.'  His ranting continued for approx[.] 15 minutes.  At one point [R.M.] took a few steps back from the gate, opened his car door and stated, 'I have a gun and the Lord is commanding me to shoot you and your animals.'  At this point [J.M.], who is seated in the passenger seat of his vehicle, moves over to the driver[']s side and manages to position the vehicle between [R.M.] and myself.  [L.M.], my visitor then intervened in attempt to protect myself and her children.  [J.M.] never left the vehicle during this incident, but was yelling out the window that she and her mother and [R.M.] had all been attacked by my dogs.  During this time my dogs never left the property and never approached [R.M.] or his wife.  [R.M.] returned to his vehicle and drove back to his house.

"Since August of 2019, I have been verbally attacked and threatened repeatedly by [R.M.].  He is constantly stalking me and has stated, 'I am watching you.'  He repeatedly approaches the property line, in his vehicle at night with his headlights of [*sic*] high, shining directly into my home and raving [*sic*] his engine for several minutes at a time.  He is repeatedly antagonistic and harassing my dogs.  He will exit his vehicle and run towards my dogs, while they are on my property and throw tree branches and snow balls

at my animals in an attempt to make my dogs aggressive towards him. He has stated he will shoot my animal if they come onto his property. He has called and made false reports to animal control saying my dogs are vicious.

"At the end of August 2019, [R.M.] approached me and my landscaper stating he had a huge problem with my placing irrigation and sprinklers in my front yard. He was clearly distraught about my plans for the project. He intervened verbally with my landscaper, who was doing the project, trying to intimidate him to stop the irrigation project. [R.M.] claimed that my water well could not sustain such a project. On approx[.] Aug[.] 28th, [J.M.] came onto my property to talk to my landscaper. She was distraught and crying and clearly upset because my irrigation sprinklers were causing a mist onto the shared easement road. At this point my landscaper phoned me, I was in the hospital caring for my dying husband, we discussed the situation and came to an agreement to move the sprinklers 8ft[.] back from the easement road. This cost me $850. I was willing to do whatever to make [J.M.] and [R.M.] happy since I did not want any animosity between us. However, [R.M.] continued to complain about my landscape project. Low voltage outdoor landscape lighting was installed for ambient lighting in the meadow. This project is at least 500 ft[.] from their home. [R.M. and J.M.] complained about the lighting and did not think it was necessary to illuminate the meadow at night. Three days after that, all the wiring to my side closest to their property line was vandalized and cut, I suspect that it was [R.M.] since my landscaper said it was definitely cut with wires and not by an animal.

"Since the death of my husband on Sept[.] 1st 2019, [R.M.] has intensified his intimidation and harassment toward me and my animals. There have been several instances where my mail and deliveries were missing. My mailbox was demolished which I suspect was caused by [R.M.] since his mailbox was untouched and they are next to each other. He interrogates anyone who visit[s] me or comes onto my property and he wants to know what business they have coming to see me.

4

"I believe this harassment stems from me purchasing his parents['] home, and he had never relinquished the mental ownership of attachment to the home or property. He has lived on the property for 50 years and he believes he owns the mountain. He has huge issues with boundaries. [R.M.] has never lived next to anyone that wasn't a family member and doesn't know how to get along with neighbors.

"I feel myself and my animals are the focus of his delusional state of mind. He is fixated on me. My safety and personal wellbeing are in jeopardy. He has stated several times he has an arsenal in his home and he has threatened to shoot me and my animals. He states that he hears voices that command his thoughts. He believes he is a conduit of the Lord and God is talking to him and commanding him. I have been told by [R.M.] on several occasions that he was arrested several times for being in possession of concealed weapons and has several restraining orders filed against him by family members."

A letter from a dog trainer attesting to the good behavior of respondent's dogs was appended to the request regarding R.M.

With respect to the form for the petition against appellant R.M., the section for specifying immediate orders, contained a request for immediate relief because respondent was afraid for her life and person from R.M. and feared that he would shoot her dogs. The corresponding part of the form with respect to J.M. was left blank.

Respondent also sought immediate TROs against appellants. The trial court granted the TROs ex parte on March 27, 2020, to last until the initial hearing date of April 27, 2020.

The trial court continued the initial hearing to June 8, 2020 and extended the TROs to the same date.

Appellants filed their responses on April 24, 2020. Both responses denied the allegations of harassment and other misconduct and claimed that respondent's primary motivation for filing the requests was "because of her concern over the dogs and animal control." Appellants admitted they had reported respondent's dogs to animal control

5

because of the dogs' aggressive behavior toward them and others. An animal control officer told R.M. they had responded to respondent's property several times and had issued her a formal warning. Respondent had been issued a citation. Respondent's daughter's boyfriend told them that while he was putting up a fence on her property, respondent told him that she filed the petitions due to appellants' complaints about the dogs to law enforcement, which caused her to be fined $600.

Appellants also filed concurrent section 425.16 motions to strike. Attached to the motions were declarations from appellants and their attorney attesting to the information supplied in their responses to respondent's requests. The motions asserted that the primary motivation for filing the requests was appellants' complaints to animal control. Appellants claimed these complaints were communications to law enforcement that were protected under section 425.16 and were privileged under section 47, subdivision (b).

The trial court continued the hearing on the motions to strike to June 19, 2020, in order to accommodate the reduction in services due to the COVID-19 pandemic. It issued a tentative ruling denying appellants' motions to strike. In the trial court's tentative ruling, it stated appellants' complaints about the dogs were not to law enforcement or animal control. Finding respondent's requests included other allegations of harassment, the trial court indicated it would deny the motions.

At the June 19, 2020 hearing on the motions to strike, appellants counsel argued that the tentative ruling erred in finding the complaints were not to animal control or law enforcement. The trial court stated to respondent, "so the Court's realizing now based upon counsel's arguments that my tentative ruling might be wrong. In which case you need to argue against that." The trial court also told respondent, who was not represented by counsel, that it would give her time to consult with an attorney if she desired, but "[o]therwise, we need to argue it today." Respondent chose to reply without counsel.

After appellants' counsel finished arguing on behalf of the motions to strike, respondent sought to present information regarding the anti-SLAPP motions, which the

6

trial court did not accept. Respondent told the court, "[T]he principal reason for me filing the restraining order was the altercation on March 13th where [R.M.] said he had a gun in his car, and he was going to shoot me and my animals. It had nothing to do with my dogs at that point. I need to prove to the Court that I have never been in court for my dogs, I have never paid any fines, and I had zero motives toward the Defendant on the night of the altercation that would make me mad or upset with him ¶ [R.M.] approached my property in a vicious, malicious way, in a psychotic state, very delusional, screaming and yelling, and I don't know if you want me to go into all of that now."

Asked by the trial court to stick to legal reasons, respondent replied that reporting her to animal control is not protected because making false statements and defamation is not protective speech. Respondent continued, "The harassment from [R.M.] has continued on six different occasions since the temporary restraining order, and I've had to file reports with the DA that you should have in your file, Your Honor."

After stating that it did not have any criminal files, the trial court said it was adopting its tentative ruling in both matters.

The minute orders for the trial court's rulings on the motions to strike (one for each motion) stated: "The tentative ruling announced for the above entitled case is attached hereto, incorporated herein, and accepted as the ruling of the Court. ¶ [Appellant's] Anti-Slapp motion to strike is denied. ¶ Restraining Order is granted and expires on 7/8/2022." Attached to the minute orders was the prior tentative ruling of the trial court, which still included the assertion that there had been no complaints to animal control or law enforcement.

The trial court also issued identical amended orders with respect to each motion that same day, reiterating its denial of the motions to strike and stating, "In the present case, the Request for Civil Harassment Restraining Orders does allege that [appellants] made 'constant complaints about my dogs . . . .' However, the Request does not state that the complaints were made to law enforcement or animal control. As such, the court

7

cannot determine as a matter of law that such statements were made during a protected activity. ¶ Furthermore, the Request also alleges yelling, throwing items, screaming, threats of bodily harm, intimidation, and missing mail. As all of the examples of claimed conduct are clearly outside of protected activities, this court cannot strike the pleading. ¶ Accordingly, the anti-slapp motion to strike is denied."

DISCUSSION

I

A. *The Anti-SLAPP Motions*

"A SLAPP is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so. ' "While SLAPP suits masquerade as ordinary lawsuits such as defamation and interference with prospective economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right." ' [Citation.]" (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.) The anti-SLAPP statute, section 425.16, was the Legislature's response to a " 'disturbing' increase' " in such suits. (*Ibid*.) It authorizes a special motion to strike to allow for the early dismissal of these unmeritorious claims. (§ 425.16, subds. (b)(1), (f).) "To encourage 'continued participation in matters of public significance' and to ensure 'that this participation should not be chilled through abuse of the judicial process,' the Legislature expressly provided that the anti-SLAPP statute 'shall be construed broadly.' (§ 425.16, subd. (a).)" (*Simpson*, at p. 21.)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' [Citations.]" (*Park v. Board of Trustees of California State*

8

*University* (2017) 2 Cal.5th 1057, 1061 (*Park*).  Only a cause of action that satisfies both steps is subject to being stricken under the statute.  (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

"Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit.  Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion.  [Citation.]" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010.)

In deciding an anti-SLAPP motion, we consider the pleadings and affidavits stating the facts upon which the liability or defense is based.  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79; *Navellier, supra*, 29 Cal.4th at p. 89.)  We do not weigh credibility or the evidence or resolve conflicting factual claims.  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385 *(Baral)*; *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)  An order granting or denying a section 425.16 motion is an appealable order and is subject to de novo review.  (§ 425.16, subd. (i).)

With respect to the anti-SLAPP statute, an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right

9

of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Statements to law enforcement or similar authorities for the purpose of gathering assistance in light of an alleged wrongdoing are protected under the anti-SLAPP statute. (*Chabak v. Monroy* (2007) 154 Cal.App.4th 1502, 1511; *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1570.) Complaints to animal control are included in this protection as "[r]eports to governmental agencies intended to prompt an investigation constitute activity in furtherance of the right of free speech or petition." (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1186, disapproved on other grounds in *Baral, supra*, 1 Cal.5th at p. 391.)

According to appellants, respondent's requests for protection under section 527.6 are based primarily on appellants' complaints to animal control. They point out that "[a] mixed cause of action is subject to section 425.16 if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are incidental to the unprotected activity. [Citation.]" (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1287.) They conclude that "it is undeniable that Respondent has based her claim for relief—a civil harassment restraining order—on Appellants' protected activities. Appellants have met their burden under the first step."

Appellants likewise find respondent has not met her burden of demonstrating her claim regarding the protected activity was "legally sufficient and factually substantiated." (*Baral, supra*, 1 Cal.5th at p. 396.) They claim that respondent's allegations regarding J.M.'s actions do not satisfy the requirements for a restraining order under section 527.6, and with regard to R.M., respondent's request was "based on unfounded speculative allegations, (e.g. the allegations related to the mailbox and damaged wires) and constitutionally protected conduct—namely the complaints to Animal Control." Appellants further assert that many of the allegations regarding R.M., like those regarding the communications to the landscaper, do not fit the definition of harassment.

10

According to appellants, "a review of the credible evidence demonstrates that the [r]equests are baseless and simply done to chill First Amendment rights." Appellants conclude that both requests should be stricken, or, in the alternative, "the protected activities that were alleged as a claim for harassment should have been struck."

The California Supreme Court explained the first-step analysis as determining the elements of the cause of action and what activities by the defendant supply those elements and consequently form the basis for the alleged liability. (*Park, supra*, 2 Cal.5th at p. 1063.) The defendant's activity, which forms the basis of the claim, must itself have been an act in furtherance of the right of petition or free speech. (*Ibid.*; *Navellier, supra*, 29 Cal.4th at p. 89.) "[T]he mere fact that an action was filed after protected activity took place does not mean [the action] arose from that activity" for the purposes of the anti-SLAPP statute. (*City of Cotati v. Cashman, supra*, 29 Cal.4th at pp. 76-77.) Assertions that are " 'merely incidental' " or " 'collateral,' " "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery," and activities that merely provide evidentiary support for a claim are also not subject to an anti-SLAPP motion. (*Baral, supra*, 1 Cal.5th at p. 394; see *Park*, at pp. 1060, 1064-1068.)

"[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra*, 2 Cal.5th at p. 1060.)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' [Citation.] '[T]he mere fact that an action was filed after protected activity took

11

place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' [Citation.] Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' [Citation.] 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e) . . . .' [Citation.] In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park, supra*, 2 Cal.5th at pp. 1062-1063.)

A section 527.6 petition is a cause of action and therefore subject to the anti-SLAPP statute. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 646-647.) The plaintiff in *Quintero* was a landlord who filed a section 527.6 petition for injunctive relief against defendant, a tenant of plaintiff, who demonstrated with others at the landlord's church. (*Quintero,* at pp. 642-643.) The Court of Appeal reversed the trial court's denial of defendant's anti-SLAPP motion, finding both prongs of the two-part test under section 425.16 had been met. (*Quintero,* at p. 642.) The court noted that the typical weapons of choice in an anti-SLAPP lawsuit are claims for " 'defamation, various business torts such as interference with prospective economic advantage, nuisance and intentional infliction of emotional distress.' " (*Id.* at p. 657.) But the court added that "resort to the courts' injunctive powers to stifle speaking out on public issues in many instances has served as the reserve arsenal for SLAPP plaintiffs. [Citations.]" (*Ibid.*) The *Quintero* court found "the circumstances of this case share salient features with innumerable SLAPP suits of the past: '[W]hile SLAPP suits 'masquerade as ordinary lawsuits' the conceptual features which reveal them as SLAPP's are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal

12

rights or to punish them for doing so.  [Citation.]'  [Citation.]"  (*Id*. at pp. 657-658.)
Finding that protesting the plaintiff landlord's treatment of tenants was protected under
section 425.16, subdivision (e)(3), the Court of Appeal held the first prong of the anti-
SLAPP test was met.  (*Quintero,* at p. 661.)  It then determined that plaintiffs had not met
their burden under the second prong, and determined the motion to strike should be
granted.  (*Id*. at pp. 664-665.)

Unlike the plaintiff in *Quintero*, respondent here did not file the section 527.6
petition to punish or enjoin activity protected under section 425.16.  Like most petitioners
under section 527.6, respondent was a non-lawyer who filed the petitions without the
assistance of counsel.  (See *Thomas v. Quintero, supra*, 126 Cal.App.4th at p. 651 ["it is
well known that, in reality, few people appearing at hearings on civil harassment petitions
are represented by counsel"]; § 527.6, subd. (k) ["[t]his section does not preclude either
party from representation by private counsel or from appearing on the party's own
behalf"].)  Respondent's petitions did not specifically seek to enjoin appellants from
filing complaints with animal control.  As previously noted, respondent's petitions
against both appellants consisted of her filling out the relevant Judicial Counsel form.  In
both petitions, respondent just checked the boxes for seeking stay away orders and
personal conduct orders for the appellant not to "[harass, intimidate, molest, attack,
strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal
property of; or disturb the peace of the other person," and "[c]ontact the person, either
directly or indirectly, in any way, including, but not limited to, in person, by telephone, in
writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax,
or by other electronic means."  Although the forms allow the petitioner to request
enjoining other conduct, respondent did not seek to enjoin appellants from complaining
to animal control.  The principal mention of the complaint to animal control was in the

declaration attached to the petitions,[3] where it constituted a single sentence out of just over two pages of alleged acts of harassment. Respondent also clarified at the hearing on the motion that she sought relief against the type of conduct in the March 13, 2019 confrontation rather than the complaints about her dogs to animal control.

Respondent's petitions do not seek to punish or enjoin conduct protected under the anti-SLAPP statute. The single reference to complaints to animal control in both attached declarations was incidental to their respective petitions, and no more than evidence in support of the underlying claim. Since appellants have not satisfied the first prong of section 425.16, we need not address the second prong.

II

*B. Restraining Order*

According to the June 19, 2020 minute orders, in addition to denying the motion to strike the two petitions, the trial court also granted restraining orders against each appellant, both expiring on July 8, 2022. But the trial court never held a hearing on the petitions for retraining orders.

Section 527.6 allows for a TRO to be issued without hearing on the day it is requested. (§ 527.6, subd. (e).) "A temporary restraining order issued under this section shall remain in effect, at the court's discretion, for a period not to exceed 21 days, or, if the court extends the time for hearing under subdivision (g), not to exceed 25 days, unless otherwise modified or terminated by the court." (*Id*., subd. (f).) In addition, "[w]ithin 21 days, or, if good cause appears to the court, 25 days from the date that a petition for a temporary order is granted or denied, a hearing shall be held on the petition. If a request for a temporary order is not made, the hearing shall be held within 21 days, or, if good

---

[3] The declaration was referenced by respondent in the part of the form addressing whether the person had harassed the petitioner at other times. Respondent filled out this section in each form by referencing the attached affidavit.

14

cause appears to the court, 25 days, from the date that the petition is filed." (*Id*., subd. (g).) Finally, "[a]t the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (*Id*., subd. (i).)

Appellants contend the trial court erred in extending the TRO for two years without a hearing. While the court instead granted restraining orders against each appellant rather than extending the TROs, appellants' contention is sound nonetheless. The trial court was without authority to enter the restraining orders without a hearing on the matter. The one hearing it held on appellants' motion to strike, did not address whether the restraining orders should be entered. We shall reverse the restraining orders and remand for additional proceedings on the petitions.

DISPOSITION

The orders granting the restraining orders against both appellants are reversed, and the matter is remanded for additional proceedings on the section 527.6 petitions. The order denying the section 425.16 motions is affirmed. The parties are to bear their own costs on appeal. (Cal. Rules Court, rule 8.278.)

_____\s\_____,
BLEASE, Acting P. J.

We concur:

_____\s\_____,
MAURO, J.

_____\s\_____,
RENNER, J.

16