Filed 3/28/23  Martinez v. Caraballo CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| EFREN MARTINEZ, | B319400 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21NWCV00566) |
| v. | |
| LINDA CARABALLO, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Olivia Rosales, Judge.  Affirmed.

Law Office of Albert Robles and Albert Robles for Plaintiff and Appellant.

Law Offices of Thomas Scully and Thomas H. Scully for Defendant and Respondent.

_____

Plaintiff Efren Martinez is a businessperson, the chair of the economic development committee at the City of Huntington Park, and an executive board member of the California Democratic party. Defendant Linda Caraballo, a former member of the city council of Huntington Park, controls a website titled "The Metro Watch," along with its associated Facebook and Instagram accounts. Caraballo has posted on those web platforms allegations of corruption against Martinez. For example, one of her posts asserted that Martinez has a "plan . . . to milk the . . . coffers" of the City of Huntington Park. (Some capitalization omitted.) In connection with each of the nine postings at issue, Caraballo "tagged" a law enforcement agency, meaning that the agency was notified of the posting and received a copy of it.

Martinez filed a verified complaint against Caraballo under the Ralph Civil Rights Act of 1976 (Ralph Civil Rights Act, Civ. Code, § 51.7). Martinez alleged Caraballo's postings violated the Ralph Civil Rights Act because she made, or threatened to make, false claims or reports to law enforcement with reckless disregard for the truth or falsity of such claims or reports. Caraballo filed a special motion to strike Martinez's verified complaint under Code of Civil Procedure[1] section 425.16, the Strategic Lawsuit Against Public Participation (anti-SLAPP) statute. The trial court granted the motion and struck Martinez's verified complaint. Martinez appeals that order.

On appeal, Martinez argues that the trial court erred in concluding the anti-SLAPP statute applies to his Ralph Civil

[1] Undesignated statutory citations are to the Code of Civil Procedure.

2

Rights Act claim.[2]  He further maintains that even if the anti-SLAPP statute is applicable, the court should have denied the motion because Martinez established a probability of prevailing on the merits of his claim.

We reject both contentions.  First, we conclude the anti-SLAPP statute governs because Martinez's claim arises from written statements made in public fora in connection with issues of public interest for the purposes of section 425.16, subdivision (e)(3).  Second, Martinez has failed adequately to plead and offer evidence supporting an essential element of his claim, to wit, that Caraballo made the postings because of her belief that Martinez possesses a characteristic protected by the Ralph Civil Rights Act (e.g., she was motivated by his actual or perceived race, sex, or political affiliation).  Finding no error, we affirm.

---

[2] To avoid confusion, our high court has "refer[red] to the proper subject of a special motion to strike [under the anti-SLAPP statute] as a 'claim,' " rather than as a " 'cause of action.' " (See *Baral v. Schnitt* (2016) 1 Cal.5th 376, 382 (*Baral*).)  We do the same here.

3

# FACTUAL AND PROCEDURAL BACKGROUND[3]

We summarize only those facts pertinent to our disposition of this appeal.

## 1. *The verified complaint[4]*

On September 1, 2021, Martinez filed a verified complaint against Caraballo, alleging a single claim under the Ralph Civil Rights Act.

Martinez is a Los Angeles County resident, "an Executive Board member of the California Democratic Party," and "a well-respected businessman known for his community involvement, including serving on the boards of several non-profit organizations . . . ." Conversely, Caraballo is a former member of the Huntington Park city council who "was forced to vacate her elected City Council position" upon being "found guilty by a jury of her peers on four felony counts, including two felony counts of perjury . . . ."

Caraballo "owns and/or operates the website for 'The Metro Watch,' and the parallel Facebook and Instagram accounts," platforms on which Caraballo has made "scurrilous postings" that infringe on Martinez's right "to be free from any threats of a

---

[3] Our factual and procedural background is derived in part from admissions made by the parties in their filings. (See *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 (*Artal*) [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)

[4] Factual and Procedural Background, part 1 summarizes certain allegations from the verified complaint. We express no opinion as to the veracity of these averments.

claim or report to a law enforcement agency made with reckless disregard for the truth or falsity of the claim or report." In particular, the verified complaint identifies nine postings Caraballo made between January 18, 2021 and August 2, 2021 that give rise to Martinez's Ralph Civil Rights Act claim.[5]

For example, "[o]n February 5, 2021, [Caraballo] stated 'HP RESIDENTS! You are all victims of a large scale pay to play. It is time to put an end to this public corruption. I urge all of you to call the Los Angeles District Attorney's Office at 213-257-2475 and the Federal Bureau of Investigations 855-5bribes and urge them to look at the abuse of Public Funds, contract fraud, campaign donations given to the Council Members, [Martinez], and the Weed Dispensaries [ . . . ] We at Metro have been very active in pushing for a STATE AUDIT, AND INVESTIGATION. Have all your friends and family call DA Gascon. Enough is Enough. The residents of Huntington Park, . . . should not be victims of the corruption.' "

Another example is Caraballo's May 14, 2021 posting: " 'WARNING!!! City of VERNON will be the next City to be destroyed by corruption. [Martinez] is spending thousands to get his people in. Message to VERNON PD your [*sic*] Next!!!' "

For each of the nine postings identified in the verified complaint, Caraballo "tagged" a law enforcement agency. "When

---

[5] Assembly Bill No. 1775 (AB 1775) added a new provision to Civil Code section 51.7, which became effective on January 1, 2021. (Stats. 2020, ch. 327, § 3 [adding Civ. Code, § 51.7, subd. (b)(2); filed with the Sec'y of State on Sept. 30, 2020]; Cal. Const., art. IV, § 8, subd. (c)(1) [providing the effective date for AB 1775].) We provide the text of this new provision in Discussion, part B.1, *post*.

a law enforcement agency is mentioned on a website, Facebook or Instagram account and 'tagged[,]' that entity is automatically notified and receives the posting, without the individual ever calling or walking into a law enforcement agenc[y's] office." Thus, Caraballo caused each of her false postings to be sent to law enforcement agencies with reckless disregard for the posting's truth or falsity.

2. *Caraballo's anti-SLAPP motion, the trial court's ruling thereon, and Martinez's notice of appeal*

On October 19, 2021, Caraballo filed a special motion to strike the verified complaint pursuant to the anti-SLAPP statute, arguing, inter alia, that the statute applies pursuant to section 425.16, subdivision (e)(3) because Caraballo made publications in a public forum in connection with an issue of public interest. Martinez opposed the motion, and Caraballo filed a reply to Martinez's opposition. The trial court heard the motion on December 16, 2021.

On January 14, 2022, the trial court issued an order granting Caraballo's motion and striking the verified complaint. The court found that Martinez's "claim arises from protected activity" for the purposes of section 425.16, subdivision (e)(4), "which applies . . . to claims arising out of any conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest." The trial court reasoned that the "claim stems from speech made in an online news publication ran by [Caraballo], wherein [Caraballo] publishes news blasts whenever [Martinez] and other political figures are engaging in or are about to engage in unlawful activity," and that "[t]he public has an interest in

6

whether [Martinez]/other political or public figures are engaging in or are about to engage in unlawful or corrupt behavior."

The trial court further concluded that Martinez had not "establish[ed] a probability of prevailing on the merits of his theory against [Caraballo]." First, the trial court found Martinez "fail[ed] to substantiate that [Caraballo] threatened or committed violent acts against [Martinez]" because, according to the court, "[t]he threat to contact law enforcement if [Martinez] is engaged in illegal activity does not suffice" under the Ralph Civil Rights Act. Second, the court found Martinez had not proven "he [was] the subject of discrimination based upon his affiliation with a protected class," given that he "fail[ed] to allege or otherwise declare that the alleged threats against him were made with any discriminatory intent based on his sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation."

On March 9, 2022, Martinez appealed the trial court's order striking his verified complaint.[6]

## APPLICABLE LAW

The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under

---

[6] The grant or denial of an anti-SLAPP motion is an appealable order. (See § 425.16, subd. (i) ["An order granting or denying a special motion to strike shall be appealable under Section 904.1."]; § 904.1, subd. (a)(13) ["An appeal . . . may be taken from any of the following: [¶] . . . [¶] From an order granting or denying a special motion to strike under Section 425.16."].)

7

the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

For the purposes of the anti-SLAPP statute, the phrase " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Resolution of an anti-SLAPP motion involves a two-pronged procedure. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Baral, supra,* 1 Cal.5th at p. 384.) "To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of

these actions fall within one or more of the four categories of
' "act[s]" ' protected by the anti-SLAPP statute" that are
identified in section 425.16, subdivision (e). (See *Wilson v. Cable
News Network, Inc.* (2019) 7 Cal.5th 871, 884.) "In deciding
whether the initial 'arising from' requirement is met, a court
considers 'the pleadings, and supporting and opposing affidavits
stating the facts upon which the liability or defense is based.'
[Citation.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, quoting
§ 425.16, subd. (b)(2).)

If the defendant discharges his or her burden vis-à-vis the
first prong, then "the 'burden shifts to the plaintiff to
demonstrate that each challenged claim based on protected
activity is legally sufficient and factually substantiated.'
[Citation.] Without resolving evidentiary conflicts, the court
determines 'whether the plaintiff's showing, if accepted by the
trier of fact, would be sufficient to sustain a favorable judgment.'
[Citation.] . . . The court 'considers the pleadings and evidentiary
submissions of both the plaintiff and the defendant [citation] . . . .
[T]he second step of the anti-SLAPP process 'establishes a
procedure where the trial court evaluates the merits of the
lawsuit using a summary-judgment-like procedure at an early
stage of the litigation.' [Citation.]" (*Litinsky v. Kaplan* (2019)
40 Cal.App.5th 970, 979–980 (*Litinsky*).)

"We exercise independent judgment in determining
whether, based on our own review of the record, the challenged
claims arise from protected activity." (*Park, supra,* 2 Cal.5th at
p. 1067.) Likewise, "we independently review . . . whether the
plaintiff has a probability of prevailing on the merits."
(*Summerfield v. Randolph* (2011) 201 Cal.App.4th 127, 135.)

9

" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' [Citation.]" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) Thus, " ' "it is the appellant's responsibility to affirmatively demonstrate error" ' " by " ' "supply[ing] the reviewing court with some cogent argument supported by legal analysis and citation to the record." ' [Citation.]" (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492, 497; *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*).) The appellant bears this burden of rebutting the presumption of correctness accorded to the trial court's decision, regardless of the applicable standard of review. (See *Los Angeles Unified School Dist.*, at p. 492 [noting that these principles apply to " ' "an appeal from any judgment" ' "]; see also *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368, 399 [indicating that an appellant must affirmatively show the trial court erred even if the de novo standard of review applies].)

## DISCUSSION

On appeal, Martinez asserts the trial court erred in finding that his claim against Caraballo is "encompassed by the Anti-SLAPP statute." He further argues that even if Caraballo's motion met "the threshold showing required under the First-Step [of the] Anti-SLAPP analysis," his "Verified Complaint survives under the Second-Step [of the] Anti-SLAPP analysis," that is, Martinez established his claim has the requisite " 'minimal merit to defeat [the] anti-SLAPP motion.' " We address each argument in turn.

10

## A. Martinez's Claim Against Caraballo Arises from Protected Activity

### 1. *Martinez's claim arises from written statements Caraballo made in public fora in connection with issues of public interest*

Martinez's verified complaint demonstrates his Ralph Civil Rights Act claim is based on Caraballo's postings on The Metro Watch website and its associated Facebook and Instagram accounts, which Caraballo sent to law enforcement agencies using the "tagging" feature. This alleged wrongful conduct satisfies section 425.16, subdivision (e)(3)'s definition of protected activity.[7]

Our high court has "articulated the two-part test" to determine whether a statement is made in connection with an issue of public interest: "[W]e first 'ask what "public issue or . . . issue of public interest" ' is implicated by the challenged activity. [Citation.] Second, we look to the 'functional relationship' between the challenged activity and the 'public conversation' about that issue, and ask whether the activity ' "contribute[s]" ' to public discussion of the issue." (See *Geiser v. Kuhns* (2022)

---

[7] Although the trial court concluded that Martinez's "claim falls squarely within" subdivision (e)(4) of section 425.16, we may affirm the court's order on the ground that subdivision (e)(3) covers Martinez's claim. (See *Chen v. BMW of North America, LLC* (2022) 87 Cal.App.5th 957, 963 ["We review the trial court's ruling, not its reasoning. A ruling that is correct must be upheld on appeal regardless of the reasoning articulated by the trial court."].)

13 Cal.5th 1238, 1249 (*Geiser*).)[8]  The "first step is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute."  (See *Geiser*, at p. 1253.)  At the second step, we assess the "context from which the conduct underlying the lawsuit arises" to determine whether the activity "furthered public discussion of the public issues it implicated."  (See *id*. at pp. 1255–1256.)  In undertaking this two-step analysis, a court "should take the position of a reasonable, objective observer."  (*Id*. at p. 1254.)

Regarding the first step of the test discussed in *Geiser*, Caraballo's online postings implicate issues of public interest because they are allegations of corruption on the part of an individual in the public eye.  Martinez claims Caraballo "publish[ed] salacious claims of corruption and/or misconduct by . . . Martinez," and, similarly, Caraballo admits her online statements "focus[ ] on [Martinez's alleged] business

_____

[8]  Although *Geiser* construed section 425.16, subdivision (e)(4) (see *Geiser, supra*, 13 Cal.5th at pp. 1248–1250), the high court's analysis is instructive on subdivision (e)(3), given that both provisions concern acts undertaken "in connection with" "an issue of public interest." (See § 425.16, subds. (e)(3)–(e)(4);  *Trejo v. County of Los Angeles* (2020) 50 Cal.App.5th 129, 143 ["[W]e presume a word or phrase has the same meaning throughout a statute."];  see also *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1253 (*Jackson*) [suggesting that "issue of public interest" has the same meaning in § 425.16, subds. (e)(3) & (e)(4)];  Burke, Cal. Practice Guide: Anti-SLAPP Litigation (The Rutter Group 2021) § 3:94, p. 3–60 ["[I]n practice, statements protected by subdivision (e)(3) are now also within and subsumed by the much broader subdivision (e)(4)."].)

entanglements and corruption in local politics."[9]  For instance, Caraballo suggested in a posting dated January 18, 2021 that Martinez and the City Attorney for Huntington Park had a "plan . . . to milk the City's coffers."  (Some capitalization omitted.)  Furthermore, Martinez alleges in his verified complaint that he is "a well-respected businessman known for his community involvement" and "an Executive Board member of the California Democratic Party . . . ."[10]  In support of her motion, Caraballo declared that "Martinez currently holds a seat on the Economic Development Committee as the Chair, an official position" at the City of Huntington Park, and that "[t]he other two seats are held by people elected to city government with his help . . . ."[11]  Given Martinez's prominent position in the community, Caraballo's allegations of misconduct against him "may reasonably be understood" by an "objective observer" "to implicate a public issue . . . ."[12]

---

[9]  As we mentioned in footnote 3, *ante*, we may consider statements made in briefing as admissions against the party making them.  (See *Artal, supra*, 111 Cal.App.4th at p. 275, fn. 2.)

[10]  Indeed, Martinez labels himself a " 'public figure' " in his opening brief.

[11]  The trial court sustained nine of the 13 evidentiary objections Martinez leveled against Caraballo's declaration.  On appeal, neither party challenges the trial court's rulings on Martinez's objections.  We do not rely on any of the inadmissible portions of Caraballo's declaration.

[12]  (See *Geiser, supra*, 13 Cal.5th at pp. 1253–1254; see also *id*. at p. 1248 [observing that "statements found to implicate a public issue generally 'concern[ ] a person or entity in the public eye[,] . . . conduct that could directly affect a large number of

The instant case also satisfies the second step of the *Geiser* test. Caraballo made the postings on The Metro Watch site and its corresponding Facebook and Instagram accounts, which are publicly-accessible websites.[13] Any objective observer would conclude that Caraballo sought to disseminate her allegations against Martinez widely. Indeed, in his verified complaint, Martinez acknowledges each of The Metro Watch's online platforms states that: (1) " 'The Metro Watch was created for the purpose of . . . holding government officials accountable for their actions' "; and (2) these "page[s] . . . serve as an eyes and ears for the public." (Boldface omitted.) The context of Caraballo's postings thus demonstrates they "furthered public discussion of

---

people beyond the direct participants[,] . . . or a topic of widespread, public interest' "]; cf. *Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1015 (*Vogel*) ["The character and qualifications of a candidate for public office constitute[ ] a 'public issue or an issue of public interest' [for the purposes of the anti-SLAPP statute]."]; *id.* at p. 1016 [" ' "Public discussion about the qualifications of those who hold or who wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment[.]" ' "].)

[13] Martinez does not dispute—and thus tacitly agrees with—Caraballo's representation that " 'The Metro Watch' site and related social media" are " '[w]eb sites accessible to the public . . . .' " (See *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

14

the public issues [they] implicated."[14]  (See *Geiser*, *supra*, 13 Cal.5th at p. 1255.)

Martinez seems to allege that Caraballo made these postings with knowledge or reckless disregard as to their falsity for the purpose of "caus[ing] harm" to him.  That being said, this averment does not detract from our conclusion that Caraballo made these statements in connection with issues of public interest for the purposes of the anti-SLAPP statute.  (See *Geiser*, *supra*, 13 Cal.5th at p. 1254 ["[T]he movant's beliefs, motivations, or characterizations . . . . are not themselves dispositive . . . . If a reasonable inference can be drawn that the challenged activity implicates a public issue, then the analysis proceeds to [the] second step [of the test for determining whether a statement was made in connection with an issue of public interest]."]; *Geiser*, at p. 1255 [noting that at the second step of the test for ascertaining whether § 425.16, subd. (e)(4) applies, " '[w]e are not concerned with the social utility of the speech at issue' "].)

_____

[14] Martinez does not argue that Caraballo's " 'tagging' " certain law enforcement agencies with these postings should be treated as an activity separate from her posting these allegations on her web platforms.  Even if we analyzed Caraballo's tagging separately from her decision to post these materials, it would appear that Caraballo's conduct still would constitute protected activity.  (See § 425.16, subd. (e)(2) [defining protected activity to include "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law"]; *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1569–1570 (*Siam*) [holding that "statements . . . designed to prompt action by law enforcement" satisfy § 425.16, subd. (e)(2)'s definition of protected activity].)

15

Additionally, we conclude that the remainder of section 425.16, subdivision (e)(3)'s definition of protected activity—that is, that Carballo made the written statements in public fora—is satisfied, given that Caraballo posted them on publicly-accessible websites. (See *Jackson, supra,* 10 Cal.App.5th at pp. 1245, 1252 ["[The defendant's] postings on his Facebook page and Instagram account . . . were all made 'in a place open to the public or a public forum' within the meaning of section 425.16, subdivision (e)(3). 'Web sites accessible to the public . . . are "public forums" for purposes of the anti-SLAPP statute.' "].)

> 2. *Whether Caraballo's statements give rise to liability has no relevance to prong one of the anti-SLAPP analysis*

Even though Caraballo's statements constitute protected activity described in subdivision (e)(3) of section 425.16, Martinez argues his claim does not arise from protected activity because (1) Caraballo's statements violate the Ralph Civil Rights Act, and (2) Caraballo's statements are not privileged under Civil Code section 47.

Yet, "the alleged wrongfulness of a defendant's conduct is an issue for the second step of anti-SLAPP analysis, not the first." (*Symmonds v. Mahoney* (2019) 31 Cal.App.5th 1096, 1107–1108.) Similarly, whether Caraballo's statements were privileged is an "issue [that] is irrelevant to the determination of whether [Caraballo] has satisfied [her] burden under the first prong of the section 425.16 analysis." (See *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 284 (*Birkner*).) To hold otherwise would " ' "confuse[ ] the threshold question of whether the [anti-]SLAPP statute [potentially] applies with the question whether [an

16

opposing plaintiff ] has established a probability of success on the merits." ' [Citation.]" (See *Symmonds*, at p. 1108, first and second bracketed insertions added.)

We acknowledge there is an "exclusion from anti-SLAPP coverage for indisputably illegal conduct . . . ." (See *Birkner*, *supra*, 156 Cal.App.4th at p. 285.) This exclusion "applies only if a 'defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law.' [Citation.]" (See *ibid*.) Caraballo certainly does not concede that her conduct was illegal as a matter of law. Furthermore, as we explain in our Discussion, part B.2, *post*, the evidence does not conclusively establish that Caraballo violated the Ralph Civil Rights Act. (See *Birkner*, at p. 285 [" '[C]onduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage . . . simply because it is *alleged* to have been unlawful or unethical.' "].)

Martinez nonetheless insists that "the express words of the amendments under AB 1775 and its legislative history" demonstrate that the Legislature "intended that such 'claims or reports to a peace officer or law enforcement agency' not be subject to dismissal by an Anti-SLAPP motion." We do not address this contention because Martinez does not cite any authority to support it. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].) We further observe that AB 1775 did not amend

17

the anti-SLAPP statute.[15]  (See Stats. 2020, ch. 327, §§ 2–4 [AB 1775 amended only Civ. Code, §§ 47 & 51.7 & Pen. Code, § 653y].)

Additionally, Martinez relies heavily on *Siam*, *supra*, 130 Cal.App.4th 1563, to argue that allegations of threats of violence under the Ralph Civil Rights Act of 1976 are per se exempt from the anti-SLAPP statute.  *Siam*, however, does not support such a broad principle.

In *Siam*, the defendant accused the plaintiff "of abusing defendant's two young sons," and "reported the alleged abuse to school officials and people involved in [a] family law matter" pending between the defendant and his ex-wife, when his ex-wife was in a romantic relationship with the plaintiff.  (See *Siam*, *supra*, 130 Cal.App.4th at pp. 1567–1568.)  When the ex-wife "first decided to end the marriage [with the defendant], [the] defendant allegedly demanded that she agree to an Islamic divorce, give up custody of the couple's two young sons, and relinquish her community property rights."  (See *id.* at p. 1567.)  According to the ex-wife, the "defendant swore revenge" "when she refused these demands . . . ."  (See *ibid.*)

The defendant reported the alleged abuse to two police departments; "[t]he resulting law enforcement investigations

---

[15] At oral argument, counsel for Martinez asserted that on page 12 of his opening brief, he had directed us to a report from a Senate Committee indicating that, in enacting AB 1775, the Legislature intended to exempt conduct violative of the Ralph Civil Rights Act from the protection of the anti-SLAPP statute. The excerpt from the report cited in Martinez's opening brief, however, shows only that AB 1775 "provide[s] that deliberately false police reports are not privileged."

18

did not reveal any abuse." (See *Siam, supra*, 130 Cal.App.4th at p. 1568.) According to the plaintiff, the defendant also "coached the boys to transmit his threats of violence to [the] plaintiff and to say 'bad things' about [the] plaintiff to other people so that he would be put in jail." (See *ibid*.) The defendant also obtained an ex parte temporary restraining order against the plaintiff by allegedly making the false representation that a child abuse investigation against the plaintiff was still open at that time. (*Ibid*.) The temporary restraining order, which prevented the plaintiff from coming near the children, was later dissolved, and the court that had issued the order awarded the plaintiff over $12,000 in attorney fees. (*Ibid*.)

The plaintiff sued the defendant, alleging (1) libel and libel per se; (2) slander and slander per se; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) making a knowingly false report of child abuse in violation of Penal Code section 11172, subdivision (a); (6) violation of the Ralph Civil Rights Act; (7) malicious prosecution; and (8) abuse of process. (*Siam, supra*, 130 Cal.App.4th at p. 1568.) The defendant moved to strike all eight causes of action under the anti-SLAPP statute, and the trial court denied the motion in its entirety. (See *id.* at pp. 1567–1568.)

On appeal, the reviewing court concluded that all but the sixth cause of action under the Ralph Civil Rights Act constituted protected activity under section 425.16, subdivision (e)(1) or (e)(2).[16] (See *Siam, supra*, 130 Cal.App.4th at pp. 1570–1571.)

---

[16] Recall that section 425.16, subdivision (e)(1) covers "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding

19

The Court of Appeal reasoned, "The first five causes of action [were] based upon [the] defendant's reports of child abuse to 'people who were legally required to report any child abuse allegations[,]' " meaning they constituted "[c]ommunications that [were] preparatory to or in anticipation of commencing official proceedings . . . ." (See *ibid.*) The *Siam* court also concluded that the malicious prosecution cause of action, which was based on the defendant's "petition for an injunction prohibiting harassment," was "susceptible to an anti-SLAPP motion." (See *id.* at pp. 1570–1571, 1582.) It further held that the abuse of process cause of action, which was predicated in part on allegations that the "defendant obtained a [temporary restraining order] by falsely representing to the court that [the] plaintiff was being investigated for child abuse," was likewise "subject to the statute since it ar[ose] from the exercise of the right of petition." (See *id.* at pp. 1568, 1570, 1579–1580.)

The Court of Appeal concluded that the Ralph Civil Rights Act claim, "however, d[id] not describe conduct arising from a protected activity." (*Siam, supra,* 130 Cal.App.4th at p. 1570.) The court remarked: "This cause of action for violation of Civil Code section 51.7 is based upon allegations that [the] defendant committed violence and made threats of violence against [the] plaintiff based upon his religion. These allegations do not describe acts in furtherance of [the] defendant's rights of petition

authorized by law," whereas subdivision (e)(2) applies to "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subds. (e)(1)–(e)(2).)

20

or free speech and are not encompassed by the anti-SLAPP statute." (*Siam*, at p. 1570, citing § 425.16, subd. (e).)

*Siam* does not assist Martinez.

First, the language of the *Siam* opinion does not purport categorically to exclude all threats of violence under the Ralph Civil Rights Act from the anti-SLAPP statute's purview. Rather, the opinion indicates that the particular Ralph Civil Rights Act cause of action alleged in that case did not arise from protected activity. (See *Siam*, *supra*, 130 Cal.App.4th at pp. 1569–1570 ["The sixth cause of action . . . does not describe conduct arising from a protected activity. *This cause of action* for violation of Civil Code section 51.7 is based upon allegations that defendant committed violence and made threats of violence against plaintiff based upon his religion. *These allegations* do not describe acts in furtherance of defendant's rights of petition or free speech and are not encompassed by the anti-SLAPP statute," italics added]; see also *In re H.E.* (2008) 169 Cal.App.4th 710, 721 [" 'Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered.' "].)

Second, *Siam* is the sole authority upon which Martinez relies for his assertion that such Ralph Civil Rights Act claims are exempt from the statute. As noted earlier in this part, Martinez failed to support this assertion with any textual analysis of AB 1775 or legislative history.

Third, the *Siam* court did not identify the allegations of threats of violence underlying the plaintiff's Ralph Civil Rights Act claim. (See *Siam*, *supra*, 130 Cal.App.4th at pp. 1569–1570.) By process of elimination, however, that claim appears to have been based on the defendant's alleged decision to do the following

21

because of the plaintiff's religion: "coach[ ] the boys to transmit [the defendant's] threats of violence to [the] plaintiff" (see *id.* at pp. 1568, 1570), given that the court found that all other alleged acts were protected activity under the anti-SLAPP statute.[17] Specifically, the court had already ruled that the defendant's reports of abuse to (a) law enforcement, (b) persons involved in the family law matter, and (c) the court that had issued the temporary restraining order were acts within the scope of the anti-SLAPP statute. (See *Siam*, at pp. 1568–1570, 1579–1580, 1582; see also *Vogel, supra,* 127 Cal.App.4th at p. 1016 [indicating that the anti-SLAPP statute applies if, "regardless of the underlying theories of recovery," the claim is " '*based on* an act in furtherance of the defendant's right of petition or free speech' "].) Coaching children to transmit threats of violence to an individual does not fit within any statutory definition of an act in furtherance of the right to petition or free speech, and Martinez does not cogently argue otherwise.[18] In contrast,

_____

**17** The *Siam* decision indicates that the plaintiff's Ralph Civil Rights Act claim was also predicated on the defendant's alleged perpetration of certain acts of violence against the plaintiff that are not further described in the opinion. (See *Siam, supra,* 130 Cal.App.4th at p. 1570.) That fact is immaterial here because Martinez does not allege Caraballo committed any acts of violence against him. Rather, Martinez alleges Caraballo merely threatened him.

**18** The *Siam* court did not further elaborate on the "threats of violence" the defendant allegedly "coached the boys to transmit" to the plaintiff. (See *Siam, supra,* 130 Cal.App.4th at p. 1568; see also *id.* at pp. 1567, 1582 [noting that the defendant's ex-wife provided a "description of [the] defendant's threats and abusive behavior," but declining to further expound upon that

Caraballo's online publication of allegations of corruption against Martinez, who held public office and a prominent position in a political party, are within the purview of section 425.16, subdivision (e)(3). (See Discussion, part A.1, *ante*.)

Lastly, when *Siam* was decided, the Ralph Civil Rights Act did not define "intimidation by threat of violence" to include "making or threatening to make a claim or report to a peace officer or law enforcement agency that falsely alleges that another person has engaged in unlawful activity or in an activity that requires law enforcement intervention, knowing that the claim or report is false, or with reckless disregard for the truth or falsity of the claim or report."[19]  Yet, Martinez's Ralph Civil Rights Act claim is premised on this definition of "intimidation by threat of violence."  Further, as noted above, the *Siam* court ruled that the defendant's false reports to law enforcement constituted protected activity, and thus could not have been the basis for the plaintiff's Ralph Civil Rights Act claim in that case, a claim that the court had ruled was not based on protected activity.  (See *Siam*, *supra*, 130 Cal.App.4th at pp. 1568–1570, 1579–1580, 1582.)  Accordingly, the *Siam* court had no occasion to rule on

---

point].)  Therefore, we have no reason to believe that the threats of violence at issue in *Siam* arguably fell within any of the definitions set forth in section 425.16, subdivision (e) (e.g., written statements made in public fora in connection with issues of public interest).

[19]  (See Stats. 2020, ch. 327, § 3 [adding Civ. Code, § 51.7, subd. (b)(2)]; Stats. 1994, ch. 407, § 1 [version of Civ. Code, § 51.7 in effect when *Siam* was issued on July 15, 2005, which does not contain new subd. (b)(2)]; *Siam*, *supra*, 130 Cal.App.4th at p. 1563 [issued on July 15, 2005].)

whether a Ralph Civil Rights Act claim based on Martinez's legal theory was protected by the anti-SLAPP statute (see *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 85, fn. 4 (*Kim*) [" '[C]ases are not authority for propositions that are not considered.' "]), and the Court of Appeal's decision strongly suggests the panel would have found that this type of Ralph Civil Rights Act claim satisfies prong one.

In sum, regardless of whether Caraballo's conduct is privileged or violates the Ralph Civil Rights Act, Martinez's claim against Caraballo arises from activity protected by the anti-SLAPP statute.

## B.   Martinez Fails to Establish a Probability of Prevailing on His Claim Against Caraballo

We now turn to whether Martinez has discharged his burden of demonstrating a probability of prevailing on his claim. (*Baral, supra,* 1 Cal.5th at p. 384; § 425.16, subd. (b)(1).)  "To meet that burden, [a] plaintiff ' "must ' "state[ ] and substantiate[ ] a legally sufficient claim." ' [Citations.] . . ." ' [Citation.]"  (*Industrial Waste & Debris Box Service, Inc. v. Murphy* (2016) 4 Cal.App.5th 1135, 1154.)  At this stage, a court should "consider[ ] . . . the substantive merits of the plaintiff's complaint, as well as all available defenses to it" (see *Traditional Cat Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 398), to determine whether the claim has " ' "the requisite minimal merit [to] proceed." ' [Citation.]" (see *Industrial Waste & Debris Box Service, Inc.*, at p. 1147).  "If the pleadings are not adequate to support a cause of action, the plaintiff has failed to carry his [or her] burden in resisting the motion."  (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 31 (*Gilbert*).)  In addition, " '[i]t is not sufficient that [a] plaintiff's complaint survive a demurrer. . . .'

[Citations.] . . . [¶] . . . [A] plaintiff[ must also] . . . show[ ] an ability to *prove* [the] case on the merits.' [Citation.]" (See *Industrial Waste & Debris Box Service, Inc.*, at p. 1155.)

### 1. *The Ralph Civil Rights Act and related statutes*

The Ralph Civil Rights Act of 1976 provides in part: "All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive." (Civ. Code, § 51.7, subd. (b)(1); see also *id.*, subd. (a) [providing Civ. Code, § 51.7 "shall be known, and may be cited, as the Ralph Civil Rights Act of 1976"].)

Civil Code section 51, subdivision (b) in turn provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) Subdivision (e) of section 51 defines or describes each of the 14 characteristics listed in subdivision (b) of that statute. (See *id.*, subds. (e)(1)–(e)(7).)

AB 1775 added the following provision to the Ralph Civil Rights Act: "For purposes of this subdivision, 'intimidation by threat of violence' includes, but is not limited to, making or

25

threatening to make a claim or report to a peace officer or law enforcement agency that falsely alleges that another person has engaged in unlawful activity or in an activity that requires law enforcement intervention, knowing that the claim or report is false, or with reckless disregard for the truth or falsity of the claim or report." (Stats. 2020, ch. 327, § 3 [adding Civ. Code, § 51.7, subd. (b)(2)].)

Additionally, Civil Code section 52, subdivision (b) provides that any person who "denies the right provided by" the Ralph Civil Rights Act, "or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following: [¶] (1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages. [¶] (2) A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by [the Ralph Civil Rights Act] in any action brought by the person denied the right . . . [and] [¶] (3) Attorney's fees as may be determined by the court." (See Civ. Code, § 52, subd. (b).) Subdivision (c)(3) authorizes a plaintiff to seek injunctive relief for violations of the Ralph Civil Rights Act. (See *id.*, subd. (c)(3).)

2. *Martinez does not show that Caraballo acted with a prohibited discriminatory motive*

Courts of Appeal have held that "[u]nder the Ralph [Civil Rights] Act, a plaintiff must establish the defendant threatened or committed violent acts against the plaintiff or their property, *and a motivating reason for doing so was a prohibited*

26

*discriminatory motive . . . .*"**20** (See *Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1291, italics added; accord, *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 880–881 (*Austin B.*) [holding that an element of a Ralph Civil Rights Act claim is "[t]hat *a motivating reason for* [*the defendant's*] *conduct was* [his/her] perception" that the plaintiff has a characteristic protected by the Act].) Martinez disagrees, arguing he is not required to demonstrate that a motivating reason for Caraballo's alleged wrongful conduct was her belief that Martinez was " 'in one of the specified classifications set forth in Civil Code section 51.7.' " Martinez further contends that even if he is obligated to make this showing, he established the " 'minimal merit' " required at the second prong of the anti-SLAPP analysis. We disagree with both contentions.

Martinez apparently claims that *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820 (*Venegas*), held that discriminatory animus is not an essential element of a Ralph Civil Rights Act claim. (See also *Austin B.*, 149 Cal.App.4th at p. 881 [referring to this element of a Ralph Civil Rights Act claim

---

**20** We acknowledge that a plaintiff may also bring suit against any person who "aids, incites, or conspires in th[e] denial" of that plaintiff's rights under the Ralph Civil Rights Act (see Civ. Code, § 52, subd. (b)(1)), and that Martinez alleges in his verified complaint that Caraballo is liable under these theories as well. Martinez offers no cogent argument in his briefing on that point; we thus do not address it further. (See *Hernandez, supra*, 37 Cal.App.5th at p. 277 ["We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' "].)

as "bias" or "animus against" a particular group].)  Martinez misreads the *Venegas* decision.

In *Venegas*, the plaintiffs filed suit against a police officer, a city, the city's police department, a county, the county's sheriff's department, the county's sheriff, and certain sheriff's deputies, alleging causes of action under title 42 United States Code section 1983 "for unreasonable search and seizure, and a similar cause of action under Civil Code section 52.1," along with causes of action for "false detention and arrest."  (See *Venegas*, *supra*, 32 Cal.4th at pp. 826–828.)  On review of a defense judgment entered after the trial court had, inter alia, sustained demurrers to the Civil Code section 52.1 claim, the Supreme Court addressed whether the plaintiffs had adequately pleaded their cause of action under that statute, which authorizes an individual to seek relief "if a person interferes, or attempts to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of the constitutional or statutory rights of '[that] individual[ ]' . . . ."  (See *Venegas*, at pp. 827–828, 841–843.)

In assessing whether the plaintiffs had stated claims under Civil Code section 52.1, the Supreme Court rejected the defense argument that the statute "requires a showing . . . that the defendants acted with 'discriminatory animus,' i.e., an intent to threaten or coerce another in violation of their constitutional rights, based on the victim's actual or apparent racial, ethnic, religious, or sexual orientation or other minority status." (*Venegas*, *supra*, 32 Cal.4th at p. 841.)  The high court acknowledged that the Ralph Civil Rights Act "declares that all persons have the right to be free from violence or intimidation because of their race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or

28

position in a labor dispute, or because they are perceived by another to have any of these characteristics."[21] (*Venegas*, at pp. 841–842.) The high court went on to explain that Civil Code section 52.1 expressly provides it is " 'independent of any other action, remedy, or procedure that may be available to an aggrieved individual under any other provision of law,' including [the Ralph Civil Rights Act]," and that "nothing in Civil Code section 52.1 requires any showing of actual intent to discriminate." (See *Venegas*, at p. 841, quoting former Civ. Code, § 52.1, subd. (g) [which has since been redesignated as Civ. Code, § 52.1, subd. (h)].) In *Venegas's* own words, "[h]ad the Legislature intended to limit the scope of [Civil Code] section 52.1 to individuals protected under [the Ralph Civil Rights Act], it could easily have done so." (See *Venegas*, at p. 842.)

Thus, even a cursory review of the *Venegas* opinion reveals the high court held only that "plaintiffs need not allege that defendants acted with discriminatory animus or intent" "under *[Civil Code] section 52.1*," (see *Venegas*, 32 Cal.4th at p. 843, italics added), and not that such a showing is unnecessary under the Ralph Civil Rights Act. Additionally, we note the *Venegas* court apparently had no occasion to determine whether discriminatory animus is an essential element of a Ralph Civil Rights Act claim, given there is no indication in the opinion that the plaintiffs had sought relief under that statute. (See *Venegas*,

---

[21] As we mentioned in Discussion, part B.1, *ante*, the current version of the Ralph Civil Rights Act also identifies the following protected characteristics: medical condition, genetic information, marital status, citizenship, primary language, and immigration status. (See Civ. Code, § 51.7, subd. (b)(1); *id.*, § 51, subd. (b).)

29

*supra*, 32 Cal.4th at p. 828 [identifying the plaintiffs' claims, none of which includes a Ralph Civil Rights Act claim]; *Kim*, *supra*, 9 Cal.5th at p. 85, fn. 4.)

Next, Martinez cites the following passages from his verified complaint to support his assertion that "Caraballo has violated . . . Martinez's civil rights under Civil Code [s]ection 51.7 on the basis of an enumerate[d] protected characteristic":  "Under the Ralph Civil Rights Act of 1976, the motive why [Caraballo] insists [upon] such scurrilous conduct that infringes upon [Martinez's] civil rights does not need to be understood nor explained; but, *maybe* as protected under subsection (b)(1) of Civil Code Section 51.7 it is in part due to [Martinez's] strong political affiliation, *i.e.*, [Martinez] is an Executive Board member of the California Democratic Party while [Caraballo] is a registered member of the political antithetical ultra-conservative American Independent Party, therefore *perhaps* this antagonistic political difference as encouraged by the recent disdainful and ill-mannered national political environment inspired [Caraballo's] delusional self-righteous conduct against [Martinez]."  (Some italics added.)

"Or [Caraballo's] infringement of [Martinez's] civil rights *could be* on account of [Caraballo] perceiving [Martinez] as having any of the other applicable characteristic[s] listed or defined in subdivision (b) or (e) of Civil Code Section 51, *e.g.*, (i) that [Martinez] is a locally born and raised respected first-generation Mexican-American success story and [Caraballo] is a jealous convicted felon and political has-been who is not from here and as such wants to cause harm to [Martinez], (ii) that [Martinez] is Catholic and [Caraballo] is known to be a member of a[ ] non-Catholic Santeria organization and as such

sanctimoniously wishes to undermine [Martinez], (iii) that [Martinez] fights for immigrant rights while [Caraballo] is anti-immigrant and publicly bashes immigrants and as such detest[s Martinez] and wants to cause him disrepute, or (iv) *could be* as simple as [Martinez] being male and [Caraballo] being female, and [Caraballo] believes she was treated unfairly for her peccadillo by law enforcement during her prosecution for public corruption and wants to minimize her legal problems by showing residents the hypocrisy of law enforcement not pursuing the purportedly graver more serious crimes against [Martinez]." (Some italics added.)

"Or any combination of these characteristic[s] listed or defined in subdivision (b) or (e) of Civil Code section 51, or any other attribute perceived or real *may be*, individually or collectively, the motivating reason for [Caraballo's] conduct toward [Martinez]. [¶] . . . Regardless, any reasonable person in [Martinez's] circumstances *could* perceive [Caraballo's] conduct as discriminator[ily] targeting [Martinez] based on one or more of these characteristic[s] noted above . . . ." (Italics added.)

These averments fall short of demonstrating that the element of discriminatory animus " 'is legally sufficient and factually substantiated.' [Citation.]" (*Litinsky*, *supra*, 40 Cal.App.5th at pp. 979–980.)[22] As the text italicized in the

_____

[22] We assume arguendo that Martinez's verified complaint may be treated as a declaration or affidavit, and review Martinez's averments at prong two for the purposes of determining (1) whether he alleged sufficient facts to state a Ralph Civil Rights Act claim *and* (2) whether he offered sufficient evidence to support that claim. (See *ViaView, Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198, 217 ["Generally, a properly verified

31

above quotations shows, Martinez merely speculates that Caraballo "could be" or "may be" motivated by her supposed belief he has a particular characteristic or combination of characteristics. Martinez does not direct us to any other allegation or evidence from which we could infer that Caraballo possessed the discriminatory animus proscribed by the Ralph Civil Rights Act.[23] It follows that Martinez fails to (1) plead adequately this element of his claim, and (2) make the requisite prima facie evidentiary showing regarding this element.[24] We thus do not address the parties' arguments concerning whether

complaint . . . may be treated as a declaration or affidavit."]; § 425.16, subd. (b)(2) [providing that "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based" in ruling on an anti-SLAPP motion].)

[23] (See also *Austin B., supra,* 149 Cal.App.4th at pp. 880–881 [indicating the Ralph Civil Rights Act requires "evidence creating . . . an inference that [the defendant's] *motivation*" for his or her conduct was the plaintiff's protected characteristic].)

[24] (See *Folgelstrom v. Lamps Plus, Inc.* (2011) 195 Cal.App.4th 986, 993 ["[A] speculative conclusion of fact . . . may [be] disregard[ed] on review of a demurrer."]; *Gilbert, supra,* 147 Cal.App.4th at p. 31 [noting that anti-SLAPP motions " ' "operate 'like a demurrer[,]' " ' " meaning that "[i]f the pleadings are not adequate to support a cause of action, the plaintiff has failed to carry his [or her] burden in resisting the motion"]; *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 714 ["In determining whether the plaintiff has made a prima facie evidentiary showing on the second prong of the anti-SLAPP inquiry, . . . . we disregard declarations lacking in foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory."].)

Martinez established the requisite minimal merit as to other essential elements of his Ralph Civil Rights Act claim. (See, e.g., Civ. Code, § 51.7, subd. (b)(1) [barring "violence[ ] or intimidation by threat of violence"].)

In sum, Martinez fails to discharge his burden to demonstrate a probability of prevailing on his Ralph Civil Rights Act claim against Caraballo.

## DISPOSITION

We affirm the trial court's order striking appellant Efren Martinez's verified complaint. Respondent Linda Caraballo is awarded her costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.